(86 South. 783)

No. 23852.

### McVAY v. ELLIS.

(June 30, 1920. On Rehearing, Jan. 3, 1921.)

*(Syllabus by Editorial Staff.)*

1. **Assault and battery** ⬤⟲12—**Epithet of "d——d liar" held not sufficient provocation.**

    Accusation of being a "d——d liar" *held* not sufficient cause or provocation for an assault and battery.

2. **Assault and battery** ⬤⟲13—**Facts held to show no cause for assault.**

    That plaintiff put his hand toward hip pocket was not sufficient cause or provocation for an assault and battery by defendant after defendant had caught plaintiff's hand so that he could not have used a pistol if he had one.

#### On Rehearing.

3. **Assault and battery** ⬤⟲39—**Punitive damages not recoverable.**

    Punitive exemplary damages are not recoverable in action for assault and battery.

4. **Assault and battery** ⬤⟲40—**$1,000 verdict held proper.**

    In action for assault and battery, where plaintiff had been struck and kicked in the head, stomach, and groin in the presence of from 100 to 200 people, causing one or two bruises, a few scratches and cuts, and a wounded fore-head, but no broken bones or permanent in-juries, and where there was some provocation, though no justification, for the assault, plaintiff was entitled to a verdict of $1,000.

Appeal from Twenty-First Judicial District Court, Parish of West Baton Rouge; C. K. Schwing, Judge.

Action by William A. McVay against William R. Ellis. Judgment for defendant, and plaintiff appeals. Reversed and rendered.

T. Jones Cross, of Baton Rouge, for appellant.

Albin Provosty, of New Roads, L. C. Franklin, of Clarksdale, Miss., and Charles A. Holcombe, of Baton Rouge, for appellee.

SOMMERVILLE, J. This suit is one sounding in damages for personal injuries and loss of property alleged to have been sustained through the unprovoked and violent assault and battery made by defendant upon plaintiff. The record shows that plaintiff and defendant had had some business transaction in which a man by the name of McDonald was also partly interested. McDonald admitted an indebtedness by him to defendant in the sum of $2,000, and gave his three several notes therefor in the sum of $666.66⅔ each. Finding out that McDonald was not financially responsible, and fearing the loss of his money, the defendant went to plaintiff, McVay, and insisted that he (McVay) was interested in the debt of McDonald to him, and that he should help him (Ellis) to collect the money from McDonald. McVay denied all interest in the matter; but, on request of Ellis, went with the latter to McDonald; and McDonald told Ellis positively that McVay was not in any way interested in the indebtedness, and that he would pay same, or a part of same, on the following Monday morning. This McDonald failed to do. On the following day, Tuesday, Ellis learned that McVay had left Baton Rouge to go to Tennessee, and that he would

return through to Clarksdale, where Ellis lived, that same evening on his way home. Ellis went to the depot at Clarksdale to meet McVay, who got off the train for the purpose of getting supper. Ellis demanded of McVay that he remain over in Clarksdale until the next day so that he might assist him in getting some money from McDonald. This McVay refused to do, saying that he was on his way home to Baton Rouge, where he had business, and that he would not remain over in Clarksdale, as he had no connection with the notes of McDonald held by Ellis. He (Ellis) declared that McVay did have something to do with the debt of McDonald, and demanded that McVay should remain in Clarksdale until the following day. Ellis said on the trial of the case:

"Well, at the time you referred to I was a little bit mixed up on the thing, and I didn't understand it just like I understand it now. I couldn't quite see through it then. I asked Mr. McDonald and Mr. McVay to get together and get the thing straightened out and squared up, these $2,000 in notes."

And it was for this purpose that Ellis went to the railroad depot and remained there until after the train came in, and until after McVay had had his supper, when he a second time demanded that McVay remain over for the purpose of clearing up McDonald's indebtedness to him. On McVay's again refusing to remain over in Clarksdale until the next day, and declaring that he had nothing whatever to do with the matter, Ellis said with emphasis, according to McVay: "You are a damned liar."

Plaintiff says that defendant used the epithet; and defendant says that plaintiff used it. There was provocation given by the defendant to plaintiff for the latter to have used the term, if he did so. Thereupon, defendant said that plaintiff placed his right hand toward his hip pocket, and that he, Ellis, took McVay's right wrist with his left hand and held it firmly, while he beat him in the face with his right.

[1] The objectionable epithet was not sufficient cause or provocation for the assault and battery administered by defendant upon plaintiff, admitting that plaintiff used the epithet.

[2] And, admitting that plaintiff did put his hand to his side, that was not sufficient cause or provocation for the assault and battery made by Ellis upon him, for the reason that Ellis had caught plaintiff's right hand and was holding it firmly. Plaintiff could not have used a pistol if he had had one; and the evidence shows that he did not have a pistol.

From all the evidence we conclude that the attack made by defendant was unprovoked, ferocious, and inexcusable.

Defendant in his testimony on the witness stand said that, after having caught plaintiff's right hand with his left, he struck him, and "kept striking him after I started on him." He said that he struck him repeatedly; that he butted his head against the wall of the depot once or twice; that he kicked plaintiff in the stomach, but did not remember how many times; that he started "like a runaway horse and didn't know where to stop"; that plaintiff begged him to stop; that he was very mad and did not.

The witness Ben Cristil, a resident of Memphis, Tenn., was a passenger on the train at the time of the occurrence referred to, and was in the dining room taking his supper at the same time that McVay was in there. He was unknown to either party; but he gives the following graphic description of the assault:

"I was dining in the hotel at the railroad depot, and I heard a noise, and I ran up to the window and I saw two men were fighting. The man that did the fighting, Mr. Ellis, he held the little fellow, I don't know his name, and he (Ellis) had something in his hand. Mr. Ellis hit him and kicked him in the head. The fel-

low was hollering for mercy, and begged him not to hit any more. Mr. Ellis did not seem to pay any attention to him; he hit him again. He bumped the little fellow against himself, and bumped him and hit him against the wall. He was fighting with him till the train was ready to pull out. The little fellow asked Mr. Ellis not to kill him. Mr. Ellis told him he was not going to kill him; and the little fellow was begging for some one to stop the fight. Mr. Ellis said he would take him to a doctor. The train was about to pull out so I boarded the train."

McVay did not board the train for his home, as was his avowed intention to do, because he was securely held by defendant until his train had pulled out; and defendant thus detained plaintiff in Clarksdale until the next day against the latter's will.

There is no question of the severity of the assault and battery, as defendant himself admits that he lost his self-possession; that he was like a runaway horse, striking, bucking, kicking, and stamping plaintiff in the head, stomach and groin. He knew exactly what he was doing. He was making plaintiff ready for a visit to the doctor when he got through with him. He told him he would take him to a doctor, while he was beating him. Defendant took plaintiff to a doctor where he was examined, and the blood was wiped from his face. The doctor, a friend of the defendant, testified that there were no broken bones, but that there were one or two bruises, a few scratches and cuts, as well as a wounded forehead. He said that it was very evident that plaintiff had been pretty badly beaten up in a personal encounter with some one, and that he had gotten the worst of it, but that the wounds were not permanent or disfiguring.

The assault and battery, as we appreciate the record, was entirely unprovoked and uncalled for, without any mitigating circumstances on the part of defendant. Much of the violence of the attack was made while plaintiff was pleading for mercy and calling on bystanders to save him from being killed.

This assault and battery took place in the presence of from 100 to 200 people, while the brother of the defendant was warning off any one who might go to the assistance of plaintiff, by saying that plaintiff was getting what he deserved.

In the case of Stoehr v. Payne, 132 La. 213, 220, 61 South. 206, 44 L. R. A. (N. S.) 604, a judgment for $500 damages was awarded plaintiff for having been beaten on the head with a loaded pistol in the hands of the defendant; and in the case of Clark v. Bisso, 145 La. 989, 83 South. 216, an award of $750 was affirmed for the beating of plaintiff on the head by the defendant with a lump of coal. In this case, considering the fierceness and violence of the attack and the utter lack of provocation for the same, the humiliation which plaintiff suffered by the attack in the presence of a large concourse of people, the forced detention of plaintiff by defendant while on his journey to his home and business, and the loss of his car fare from Clarksdale, Miss., to Baton Rouge, we think that he is fully entitled to a judgment for $2,000.

It is therefore ordered, adjudged, and decreed that the judgment appealed from be annulled, avoided, and reversed, and that there now be judgment in favor of plaintiff and against defendant in the sum of $2,000, with interest from judicial demand, and for costs.

O'NIELL, J., concurs in the decree.

PROVOSTY, J., recused.

### On Rehearing.

O'NIELL, J. The rehearing granted in this case was restricted to the question of the amount of damages that should be allowed. On re-examination of the evidence,

we find that there was some provocation, though not justification, for the assault made by defendant upon plaintiff. In fact, the evidence leaves a serious doubt as to which one of the parties called the other a damned liar before defendant lost his temper and beat plaintiff so severely.

[3] Although the assault and beating administered by the defendant upon the plaintiff was a merciless attack, we have concluded that it was done in the heat of passion and upon considerable provocation. It is well settled by recent decisions of this court that punitive or exemplary damages should not be allowed in any case. In criminal prosecutions alone the courts administer punishment.

[4] The judgment heretofore rendered by this court is now amended by reducing the amount to $1,000, with 5 per cent. interest from judicial demand—that is, from the 22d of May, 1919—and, as thus amended, the judgment is reinstated and made the final decree of this court.

PROVOSTY, J., recused.