RAMÓN JAIME MAYSONET, represented and assisted by his parents with *patria potestas*, ETC., Plaintiff and Appellee, *v.* HEIRS OF LUIS E. ARCELAY, ETC., Defendants and Appellants.

No. 9763. Argued December 21, 1948.—Decided June 24, 1949.

156

*Harry M. Besosa* for appellants. *E. Pérez Casalduc* and *J. Córdova Rivera* for appellee.

Mr. Justice Negrón Fernández delivered the opinion of the Court.

Ramón Jaime Maysonet, a minor represented and assisted by his parents with *patria potestas* Emeterio Maysonet and Generosa Pérez, brought an action against Luz María and Luis Arcelay, Jr., the sole and universal heirs of Luis E. Arcelay, for the recovery of damages suffered by said minor when he was thrown against the pavement by Mariano Burgos Torres, an employee of the predecessor in interest of defendant heirs, while Burgos Torres was in charge of a merry-go-round operated in the recreation park of Manatí by said predecessor for public amusement at a charge of five cents per person.

Defendants denied liability and set up as special defense that if the acts of Burgos were true, they were his own personal acts committed outside the course and scope of his employment.

After a trial on the merits the lower court sustained the complaint and sentenced defendant heirs to pay jointly to the plaintiff the sum of $2,000 as compensation.

Defendants appealed and in their brief make the following assignment of errors:

"1. That the district judge considered as an established fact that Burgos (defendants' employee) had thrown the minor May-

sonet off the merry-go-round 'because said child had not paid for his ticket or because he knew that the child had not paid for it.'

"2. Because nowhere in the record or in the transcript of the evidence is there the slightest indication of the value of the damages alleged or held as proved by the lower court, hence, the lower court not being authorized or in a position to fix the amount of damages unless it were nominal damages."

The evidence for the plaintiff showed that Luis E. Arcelay, predecessor of defendant heirs, operated in the recreation park of Manatí on or about April 17, 1943, a merry-go-round for public amusement. In order to ride on the merry-go-round a fee of 5 cents had to be paid by each person, and a ticket was obtained at the booth destined to that purpose entitling the person purchasing it to ride one of the horses. Mariano Burgos Torres was Arcelay's employee in charge of the merry-go-round and, in addition to starting the motor and the merry-go-round, he would afterwards go into the merry-go-round and collect the money or the tickets. On the day of the occurrence the plaintiff minor bought his ticket together with another child; he got on the merry-go-round and mounted one of the horses and after handing his ticket to Burgos he dismounted to help a little girl get on the merry-go-round just as it started. He then gave his horse to the girl and mounted on another horse. At this moment he was seized by Burgos from behind and under his arms and was thrown off the merry-go-round into an area surrounded by a fence erected to prevent persons from entering without paying. The minor fell on the pavement from where he had to be taken to the hospital, because he could not stand up. He suffered a fracture of the right femur, and he was confined in the Arecibo District Hospital for several months. Before sustaining such fracture he had no difficulty in walking, and after the fracture he feels ill, cannot bend, cannot sleep, and his leg hurts. The medical certificate admitted by stipulation of the parties showed that the fracture of the femur had

been "through the Great Trochanter." The lower court saw the difficulty in the movements of the minor's right leg and noted that it observed a "noticeable limp."

The evidence for defendants tended to show that on the day of the occurrence the plaintiff minor threw a piece of wood at Burgos, hitting him on the face when Burgos said to several youngsters who were molesting him: "Get out of here," before the merry-go-round had started; that after the merry-go-round had started, plaintiff, together with other children, were jumping on it, and Burgos, who was sitting in one of the coaches, stood up to pour some water in the engine and that at that same time the minor, when he saw Burgos, jumped off the revolving merry-go-round and over the fence, and fell to the ground; that the duties of Burgos were to sit on a seat and operate the clutch until the merry-go-round revolved 12 or 15 times, and that his duty was not that of collector, there being another person for that purpose; that when the child threw the piece of wood at him and hit him he did not become angry.

In the first assignment of error defendants charge the lower court with having held as proved that Burgos, defendant's employee, had thrown the plaintiff minor off the merry-go-round "because he had not paid for his ticket or because he *knew* that said child had not paid" without there being any grounds to so hold. (Italics ours.)

If we examine the opinion of the lower court we find that the word it used was "assumed". Although appellants are correct in stating that the lower court struck out from the record the statements that "Mariano Burgos thought that we were on the merry-go-round without paying and then when he seized me from behind he threw me to the ground," what said court stated in its opinion was that "The manner in which the injury occurred induces the court to believe that Burgos wished to throw off Maysonet because he had not paid for his ticket, or because he assumed that he had not paid for it."

The conclusion of the lower court is supported by the evidence to which it gave credit. From the acts of Burgos in seizing the minor and throwing him off the merry-go-round at the time when the latter, after leaving his seat on one of the horses to a girl, was going to ride another horse, there is sufficient basis to infer that Burgos could assume that the minor had failed to pay for his ticket. Such being the situation it only remains to be determined, in view of the insistence of appellants that said act was committed outside the scope of Burgos' employment and that it was his criminal act for which defendants should not be held liable, whether under the doctrine making the principal not only liable for the negligence and careless acts but also for the criminal acts of his agent committed in the course of and within the scope of his employment, *Suárez* v. *Saavedra*, 60 P.R.R. 589 and 52 P.R.R. 662; 2 Am. Jur., Agency, § 359 *et seq.; Field* v. *Lancaster Cotton Mills*, 77 S. C. 546, 58 S. E. 608; *Munick* v. *City of Durham*, 181 N. C. 188, 106 S. E. 665, the act of Burgos was so outrageous or he inflicted such a disproportionate punishment to the minor, 1 Restatement of the Law of Agency, § 235, p. 528, that it being his duty as manager of the merry-go-round to watch for and protect the interests of his employer in not permitting persons who had failed to pay for their entrance to ride on the merry-go-round, he departed in such a manner from his duties upon so acting, that it exempts defendants from responsibility.

· Due to the position of Burgos as manager of the merry-go-round every time Arcelay absented himself and the manner in which the business was operated, that is, through the payment of five cents and the obtainment of a ticket, in a booth devoted to their sale, which was delivered to Burgos when the merry-go-round had already started, the merry-go-round being surrounded by a fence which prevented any person except those who had previously purchased their tickets from entering therein, it is unavoidable to conclude

that Arcelay, and Burgos during the absence of the former, would attempt to prevent persons who failed to pay from enjoying the amusement. It was therefore within the duties of Burgos as manager of the merry-go-round—because it was an essential part of the business itself—to require a ticket from every person who mounted the horses, and hence to take those measures which should have been reasonably exercised whenever any person attempted to enjoy the amusement without paying. From the manner in which Burgos acted towards the plaintiff minor, the lower court correctly reached the conclusion that the latter acted under the belief that the child had not paid for the ride on the merry-go-round that had already started; and that the criminal manner in which he acted within the scope of his employment and for the protection of the business of his employer does not exempt defendant from liability for said act. *Suárez* v. *Saavedra, supra; Great Southern Lumber Co.* v. *Williams* (C.C.A. 5, 1927), 17 Fed. 2d 468; *Starnes* v. *Monsour's No. 4*, 30 So. 2d 135; 1 Restatement of the Law of Agency, § 229, p. 506. The test of liability of the employer for the acts of his employee is not whether or not the act of the employee was wilful and intentional, but whether the employee acted for the furtherance of the employer's business and within the scope of his authority, or whether he stepped aside his duties and committed a tortious act of a personal character. The general recognized rule is that an employer is liable for the reckless, wilful, intentional, wanton, and malicious act of his employee, as well as for his imprudent and careless acts if they are committed while the employee is acting in the exercise of his authority and within the course of his employment or with a view to the furtherance of his employer's business, and not for a personal purpose of the employee. In general, the rule is that the master is liable for all tortious act of his servant committed by such servant while he is acting within the scope of his employment. So far are these

authorities from holding the employer to be excused from responsibility when it appears that the employee acted with malice, that proof of such malice or wilfulness has been held to be a ground for enhancing the damages which may be recoverable against the employer. Of course, if it is to be concluded that the employee was not acting pursuant to his authority or within the scope of his employment, the employer is not liable. The latter is not to be held liable either for his employee's wilful misconduct, even though in the course of his employment, if it was not done within the scope of his employment or in the furtherance of the employer's business. See 35 Am. Jur., Master and Servant, § 561; 3 Cooley on Torts, 4th ed., § 391 *et seq.* Cf. *Casanova* v. *González Padín Co.*, 47 P.R.R. 461.

Similar principles were set forth in the concurrent opinion of Mr. Justice McLeary in *Marrero* v. *López et al.*, 15 P.R.R. 746; and although in said case judgment was affirmed dismissing the action for damages instituted by the father of a minor killed by defendant's overseer who fired at him several shots with his revolver when the child ran away from the tobacco barn located on the property of the employer, in which he slept, guarding the tobacco which belonged in equal shares to his father and the owner of the land, after having been attacked by the overseer because he had not given him a drink of water, the conclusion was predicated upon the fact that when the overseer fired the fatal shots he did not do it for the purpose of protecting the interest of the employer or within the scope of his duties as overseer. This Court decided that the overseer acted beyond the scope of his authority, and not in the line of his principal's business and exceeding his duties.

The same thing can be said of *Martínez* v. *Trujillo & Mercado*, 24 P.R.R. 271, *Torres* v. *J. Lema & Co.*, 36 P.R.R. 72, in both of which the case of *Marrero* v. *López, supra,* is cited. In said cases, as in the *Marrero* case, there are set forth the

general principles which govern the responsibility of the principal for the actions of his agent or employee, but the conclusion is reached in each that the acts committed by the employee were not within the course of his employment or the scope of his duties.

The facts in the above-cited cases are distinguishable from those of the case at bar in that, as we have already stated, Burgos' action was within the scope of his employment and although it was performed in a criminal way it was done for the purpose of protecting the business interest of his employer. Therefore the first error assigned was not committed.

In our judgment the second error was not committed either. The evidence showed that there was a fracture of the femur "through the Great Trochanter" and that the minor was confined several months in the District Hospital of Arecibo remaining, as was noted by the lower court, with a "noticeable limp" in his right leg and difficulty in the movements of the leg. This difficulty or limp did not exist before the accident. And also there is evidence, admitted without objection from defendants, that since the time of the fracture the minor has felt bad, cannot bend, cannot sleep, and his leg hurts. In the case at bar compensation is only claimed for the fracture of a leg, physical pain, mental anguish, and suffering. In cases of this kind there is no applicable fixed rule nor a basis for a mathematical calculation. *Defendini* v. *White Star Bus Line, Inc.*, 60 P.R.R. 357, 360. The essential thing is that the existence of the damage should not be uncertain or speculative. *White Star Bus Line* v. *Glens Falls Ind. Co.*, 60 P.R.R. 830, 839. In the *Defendini* case where the plaintiff suffered a fractured ankle but there did not remain any permanent incapacity, this Court increased from $500 to $1,000 the damages granted to the plaintiff for physical suffering, as it considered the former inadequate. In the case at bar the fracture of a leg suffered

by the minor was proved, and, as a consequence, the mental anguish and suffering and the physical pain alleged in the complaint. Under such circumstances, there being sufficient evidence for the determination of the damages granted, and the damages not having been attacked as clearly inadequate, we shall not interfere, *García* v. *Fernández*, 52 P.R.R. 176, 181.

The lower court did not make any pronouncement as to the imposition of costs. Since judgment was rendered against defendants, it was imperative to order them to pay costs. *Sánchez* v. *Cooperativa Azucarera*, 66 P.R.R. 330, 337. For the reasons stated and the errors assigned not having been committed, the judgment appealed from is modified to include a pronouncement ordering the defendants to pay costs, and as thus modified, it is affirmed.

Mr. Chief Justice De Jesús did not participate herein.