369 So.2d 237 (1979)
Marc Allen POSEY
v.
Raynard J. FABRE et al.
No. 9784.
Court of Appeal of Louisiana, Fourth Circuit.
March 7, 1979.
Rehearing Denied April 16, 1979.
Writ Refused June 11, 1979.
*238 Robert F. Fadaol, Gretna, for plaintiff.
James M. Tompkins (McGlinchey, Stafford, Mintz & Hoffman), New Orleans, for defendant American Bankers Ins. Co. of Florida.
Jacob J. Amato, Jr. (Amato & Creely), Gretna, for defendant Schieffler Bros. Marine, Inc.
Kenneth W. Manuel (Ungar, Jacobs, Manuel & Kain), New Orleans, for defendant Raynard J. Fabre.
Before REDMANN, STOULIG and BEER, JJ.
REDMANN, Judge.
Raynard J. Fabre was employed as a tug captain by Schieffler Brothers Marine, Inc., which was insured against liability "as owner" of the tug by American Bankers Insurance Company. Those three parties appeal from a judgment for $70,000 for injuries to plaintiff when Fabre deliberately hit him on the elbow with a pipe.
The issues are whether Fabre is liable despite plaintiff's verbal provocation (argued to be "contributory negligence"); if so, whether the employer is liable despite *239 the apparently personal nature of Fabre's action; and, if so, whether the employer is liable "as owner" of the tug, making the insurer also liable, notwithstanding that the incident occurred on shore.

Facts on Liability
Plaintiff had been a crewman on the tug until Fabre fired him three to six weeks before this incident. On the day of this incident, plaintiff boarded the tug, docked in the Harvey Canal, to look for his cousin Jimmy Schieffler, one of the owner's principals, whose office was on the dock some 35 feet from the tug. Plaintiff often stopped at the office to visit his cousin on his way to his nearby work. When plaintiff did not find his cousin at the office, he went to look for him on the tug. Plaintiff accidentally knocked a galley door into Fabre, who was holding a tray of food, and, although plaintiff says he apologized, he concedes that he may have been "sarcastic." Fabre ordered plaintiff off the boat, without telling him that Schieffler was in the engine room working. Although there is dispute over details (including whether plaintiff twice boarded the tug), there is agreement that Fabre did oblige plaintiff to leave the boat, and that plaintiff cursed Fabre. Not conceded by plaintiff, but implicitly accepted in the trial judge's questioning of Fabre, was that plaintiff's cursing included calling Fabre "the word . . . M.F." (Fabre's delicacy which prevented his using the word rather than two letters was matched by that of counsel and the trial judge, none of whom clarified in the record the word that Fabre found so intolerable.) Fabre, who had picked up a three-foot long pipe to force plaintiff off the tug, himself left the tug to follow plaintiff onto the dock and told plaintiff that if he repeated that epithet Fabre would hit him. Plaintiff did repeat it and Fabre did hit him on the left elbow with the pipe. By this time plaintiff was almost to the Schieffler office on the dock, some 35 feet away from the tug.

Fabre
Fabre is no doubt liable. His "contributory negligence" argument is but a restatement of the argument that verbal as well as physical abuse, by constituting one the aggressor, should be a defense to one's damage action for the beating one received in response. Whatever be its merits in respect to a third person only vicariously liable for the assault, this argument is rejected in respect to the assaulter himself by Morneau v. American Oil Co., La.1973, 272 So.2d 313.

Schieffler Marine
The trial judge's inference that Fabre was acting "in the exercise of the functions in which . . . employed", La. C.C. 2320, and that the employer is therefore liable, is not supported by the record.
Fabre's initial action towards ejecting plaintiff from the tug did not arise from any employment motivation on his part, but from his annoyance that plaintiff had hit him with the galley door. The ejection was contrary to the presumable interest of his employer's principal, Jimmy Schieffler, who regularly received visits from his cousin, plaintiff. Unlike the dispute in LeBrane v. Lewis, La.1974, 292 So.2d 216, this dispute was not "primarily employment rooted", or reasonably incidental to the employee's work duties, although it did occur during the hours of employment and near to although not on the employment premises.
In LeBrane, the supervisory employee was attempting from the outset of the dispute, and until the stabbing occurred, to further the employer's interests by obliging the other employee to get his hair cut suitably and, finally, by firing and evicting that employee. In our case, Fabre had no employment motive. He abandoned his employment in order to pursue the personal purpose of punishing a taunter. The employer is not vicariously liable and therefore the insurer is not liable.

Quantum
Plaintiff suffered a fracture of the left olecranon process, which required surgery twice (besides later removal of a surgical screw).
*240 The treating physician reported on March 15, 1976, that he did not anticipate "any significant permanent disability" although plaintiff then had a 10% loss in extension. Nevertheless that physician on November 22, 1977 reports that plaintiff will have a permanent 10% loss in extension, without explaining why this permanent disability was earlier unanticipated. Another physician, having examined plaintiff on October 15, 1976, then found extension limited by only two to three degrees and opined that plaintiff could do everything with the arm that he could do before the injury.
The trial judge awarded $3,017.44 medical expenses, $9,937.35 past lost wages, $32,292 future loss of earnings, and $25,000 general damages.
Medical bills prove the $3,017.44 expenses.
The wage awards, computed in plaintiff's post-trial brief, are not supported by the evidence. On future loss, the brief had taken the 10% loss in elbow extensibility and converted it into a 10% earnings loss for the life expectancy of plaintiff. But the evidence is that plaintiff was earning over twice as much in construction work as he claimed in brief to have earned prior to his injury. The evidence thus shows no future loss of earnings. On past loss, the brief calculated a 17-month loss of a technically unproven $135 weekly wage. The record does not support 17 months of disability, but the medical reports do show periods of four and five months' disability after the operations. The maximum proven loss is nine months at $135 weekly, or $5,255.
The general damages award of $25,000 is very probably beyond the "much discretion" of La.C.C. 1934(3) as a reparation for a fractured elbow tip with two surgical procedures and no serious disability. Independent of the question of mitigation of damages, we view $12,500 as approximately the maximum awardable. And we reduce, because plaintiff brought his injury upon himself if we understand correctly that "the word . . . M.F." was "motherfucker," as the overall context demonstrates almost to a certainty. This epithet, one of the most offensive, does not excuse but explains and mitigates the response of the already angry tugboat captain, because surely it is included among "words which are calculated to provoke and arouse to the point of physical retaliation . . .," "Morneau v. American Oil Co., La.1973, 272 So.2d 313, 316 (reaffirming Richardson v. Zuntz, 1874, 26 La.Ann. 313); McVay v. Ellis, 1921, 148 La. 247, 86 So. 783; Broussard v. Citizen, La.App. 1 Cir. 1950, 44 So.2d 347; Foster v. Barker, La. App. 1 Cir. 1974, 306 So.2d 910 (reducing general damages and refusing to award lost wages).
We conclude that a total award of $10,000 will compensate plaintiff as much as Fabre ought to compensate him in view of the extreme mitigating circumstances.
Reversed as to Schieffler Marine and American Bankers Insurance at plaintiff's cost; amended as to Fabre to reduce quantum to $10,000, with plaintiff and Fabre to divide the costs of this appeal equally.