570 So.2d 221 (1990)
Irma WHITE
v.
MONSANTO COMPANY and Gary McDermott.
No. 90-CA-362.
Court of Appeal of Louisiana, Fifth Circuit.
November 14, 1990.
Rehearing Denied December 17, 1990.
Writ Denied February 22, 1991.
*222 Gerald E. Meunier, New Orleans, for plaintiff/appellee.
Norman A. Mott, III, James A. Nugent, New Orleans, for defendants/appellants.
Before KLIEBERT, GRISBAUM and WICKER, JJ.
WICKER, Judge.
Monsanto Company and its employee, Gary McDermott, the defendants, appeal a judgment in favor of the plaintiff, Irma White. The issues are (1) the exclusiveness of the worker's compensation law, (2) juror bias, (3) jury instructions, and (4) damages. We affirm.
White and McDermott were both employees of Monsanto, with McDermott in a supervisory position. During the course of the work day, McDermott cursed White and two other employees, causing White to suffer an anxiety attack resulting in hospitalization. The words he used included *223 "fuck", "fuckin'", "motherfuker", "ass", and "shit." McDermott also threatened to have these employees fired. Following the incident, White voluntarily remained a part of McDermott's crew and an employee of Monsanto.
White sued McDermott and Monsanto, as his employer, for intentional infliction of emotional distress. A jury awarded her $60,000.00 in damages against both defendants in solido.

THE INTENTIONAL TORT EXCLUSION
La.R.S. 23:1032 limits a worker's remedy for on-the-job injury to worker's compensation unless the injury resulted from an intentional act. The intentional act alleged by White, and found by the jury, is intentional infliction of emotional distress. "One who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another is subject to liability for such emotional distress, and, if bodily harm to another results from it, for such bodily harm." Restatement (2d) of Torts, Sec. 46(1) [1965], cited with approval in Steadman v. South Cent. Bell Telephone Co., 362 So.2d 1144 (La.App. 4th Cir.1978).
In Louisiana, a plaintiff wishing to recover damages for this tort must prove that the defendant "actively desired to bring about the mental anguish or realized to a virtual certainty that it would occur" and that the defendant's conduct was outrageous. Steadman v. South Cent. Bell Telephone Co., supra at 1145; Smith v. Mahfouz, 489 So.2d 409 (La.App. 3rd Cir. 1986), writ den. 494 So.2d 1181 (La.1986).
No one disputed White's evidence that she is a decent, church-going person who does not use or condone profanity. She had worked for Monsanto for about nine years prior to this incident. On the morning in question, she and three other employees were assigned to transfer the contents of a large container, marked "corrosive", to one-gallon containers. They requested gloves and safety goggles and were waiting for them to arrive. Two of the other employees were apparently sitting around waiting for the equipment, against company regulations which required employees to busy themselves cleaning the work site if they had to wait. White, however, began cleaning up in the area.
McDermott appeared on the scene, angry and ranting, having been told that White and the other employees were just standing around. From a point about two or three feet from White, he referred to them as "motherfuckers" repeatedly, accused them of sitting on their "fuckin' asses", and threatened to fire them. The employees knew that McDermott had the authority to remove them from the premises and recommend termination. The whole exchange lasted about a minute or more. McDermott testified that his language and demeanor were deliberate and appropriate. He also admitted that his intent was to shake up the employees and make them fearful of losing their jobs. There was testimony, although denied by McDermott, that he again threatened White after she returned to work that he would stack the deck against her if she complained about what he had done.
We believe White has proved that McDermott actively desired to bring about her mental anguish. We also believe that, under these factual circumstances, McDermott's conduct was outrageous.
Despite the claims of McDermott and Monsanto that this language is commonplace and can be heard in the comedy routines of people like Eddie Murphy and Richard Pryor, in many circles and for many people this kind of language is not commonplace. For example, McDermott and Monsanto excused one juror for cause because of her attitude toward such language. People can choose whether or not they wish to watch Richard Pryor or Eddie Murphy. White was, in effect, a captive audience to McDermott's profanity and threatsshe could not retaliate in kind to her supervisor and may not have been able to walk away without jeopardizing her employment.
The case of LeJeune v. Rayne Branch Hosp., 556 So.2d 559 (La.1990), is evidence that Louisiana is expanding the range of *224 compensable mental or emotional injuries to now include damages resulting from injuries to a closely-related third party. The Court noted that "the interest in freedom from mental disturbance has been the subject of substantial controversy." At 563.
California courts have allowed recovery under similar circumstances. In Alcorn v. Ambro Engineering, Inc., 2 Cal.3d 493, 86 Cal.Rptr. 88, 468 P.2d 216 (1970), the plaintiff was a black employee who was told by his white field supervisor, "You goddam `niggers' are not going to tell me about the rules. I don't want any `niggers' working for me. I am getting rid of all the `niggers'...." Alcorn sued for intentional infliction of emotion distress, even though under arbitration he had been reinstated with back pay. He alleged damages including shock, nausea, insomnia, and humiliation. The employer argued that Ambro had failed to state a cause of action. In ruling in favor of Ambro, the Court stated 86 Cal.Rptr. at 90-91, 468 P.2d at 218-219:
Thus, according to plaintiff, defendants, standing in a position or relation of authority over plaintiff, aware of his particular susceptibility to emotional distress, and for the purpose of causing plaintiff to suffer such distress, intentionally humiliated plaintiff, insulted his race, ignored his union status, and terminated his employment, all without just cause or provocation. Although it may be that mere insulting language, without more, ordinarily would not constitute extreme outrage, the aggravated circumstances alleged by plaintiff seem sufficient to uphold his complaint as against defendants' general demurrer.
In another California case, the lower court had dismissed the complaint that the defendants had caused a complaint and summons to be served on the plaintiffs at twelve o'clock midnight, pounding on the door in a loud and boisterous manner that resulted in waking the whole family and the neighborhood. The appellate court, in reversing the trial court, held 97 Cal.Rptr. at 586 and 588:
Nevertheless when the defendants intended the consequences, and they in fact result, as is alleged in this case, should the court substitute its judgment as to what is outrageous in order to relieve the defendants of responsibility for their intended acts? Comment h. to section 46 provides as follows: "It is for the court to determine, in the first instance, whether the defendant's conduct may reasonably be regarded as so extreme and outrageous as to permit recovery, or whether it is necessarily so. Where reasonable men may differ, it is for the jury, subject to the control of the court, to determine whether, in the particular case, the conduct has been sufficiently extreme and outrageous to result in liability." (Rest.2d Torts, at p. 77.)
. . . .
Although there is no allegation that the plaintiffs were particularly susceptible to emotional distress, the alleged tortfeasor, particularly when as here he intends injury, must take his victim as he finds him. (Citations omitted.)
Golden v. Dungan, 20 Cal.App.3d 295, 97 Cal.Rptr. 577 (1971).
Colorado considered a situation where there had been several instances of verbal abuse, including calling the plaintiff a "sick old woman" when she was visibly bandaged following cancer surgery. The appellate court affirmed a lower court award of damages. Meiter v. Cavanaugh, 580 P.2d 399 (Colo.Ct.App., Div. I, 1978), writ den. 1978.
A South Carolina court found that a series of loud, vicious cursing episodes were actionable. Ford v. Hutson, 276 S.C. 157, 276 S.E.2d 776 (1981). An earlier case involved a house siding salesman who in a "loud and threatening voice, and with vile, profane and abusive language, threatened to bring suit against the respondent and her husband, sell their said dwelling house and throw them and their children into the street." Turner v. ABC Jalousie Company of North Carolina, 251 S.C. 92, 160 S.E.2d 528 (1968). The Court held that this stated a cause of action, although in this case the plaintiff had alleged physical injuries, i.e. collapse of her nervous system.
*225 We believe that vile, profane, and abusive language can be outrageous, depending upon the factual circumstances. The Fourth Circuit, for example, has held the term "motherfucker" to be one of the most offensive words, "`calculated to provoke and arouse....'" Posey v. Fabre, 369 So.2d 237, 240, (La.App.1979), writ den. 371 So.2d 1344 (La.1979) (citations omitted). We do not hold, however, that profanity in the workplace is in and of itself actionable; each case must be judged on its merits. Where the language used can be considered vile, abusive, and profane; where the person being cursed and/or threatened is likely to be more than usually offended by that language, as was this sensitive female employee; and where the offender is an employer or supervisor with the authority to recommend or impose firing or other "disciplinary" action, then there is an egregious lack of mutuality and appropriateness that rises to the level of "outrageous." We believe that these words under these circumstances are such that redress is available under La.C.C. art. 2315.
We have previously held that an employer can be vicariously liable in tort for the intentional torts of its employee toward a co-employee. Delone v. Odom, 561 So.2d 1015 (La.App.1990), citing Jones v. Thomas, 426 So.2d 609 (La.1983), appeal after remand 557 So.2d 1015 (La.App. 4th Cir.1990). To recover from Monsanto, White had to prove that McDermott intended to inflict emotional distress on her, that she was injured, and that McDermott was in the course of his employment with Monsanto at the time the incident occurred.
A jury, divided nine to three, determined that McDermott intentionally inflicted emotional distress on White and that she was injured thereby. A unanimous jury determined that Monsanto was liable for McDermott's acts. We do not believe that the jury's factual determinations are clearly wrong, and we decline to reverse them. Rosell v. ESCO, 549 So.2d 840 (La.1989).

DAMAGES
The jury awarded White $60,000.00 in damages for her suffering. We cannot say this award is manifestly erroneous.
White's testimony and that of her doctor, Wilson Couch, M.D., was uncontradicted. She went to the plant infirmary within minutes of McDermott's tirade. She had tightness and pain in her chest, pounding and pain in her head, and appeared to be in shock. The plant nurse sent her to see her doctor, who met her at the hospital. Dr. Couch admitted White, who at this point had chest pain, shortness of breath, and cold clammy hands. To rule out a heart attack she spent two days in the hospital in the coronary care unit and another day in a regular room. While she was there, she had intravenous fluids, had blood drawn, was hooked up to an EKG, had dye injected into her veins, and was subjected to an echocardiogram. Her medical bills totalled $15,000.00.
During this time, White feared that she would die from a heart attack. Dr. Couch's final diagnosis was acute anxiety reaction, and he testified that the probable cause was the incident at work. White was discharged with a prescription for tranquilizers, and she has had recurring nightmares about her experience.
Neither party has cited any jurisprudence in support of their claims, respectively, that the award is too high or appropriate. We have not found any cases which involve damages of this kind. However, in awarding tort damages, "much discretion must be left to the judge or jury." La.C.C. art. 2324.1.
Before a trial court award may be questioned as inadequate or excessive, the reviewing court must look first, not to prior awards, but to the individual circumstances of the present case. Only after analysis of the facts and circumstances peculiar to this case and this individual may a reviewing court determine that the award is excessive.
Reck v. Stevens, 373 So.2d 498, 501 (La. 1979).
Under the circumstances of this case, we do not believe the jury abused its discretion in awarding $60,000.00. McDermott intended to and did inflict emotional pain on *226 White, which resulted in actual physical pain, both through her symptoms and the medical procedures she suffered while hospitalized. Her medical expenses were high, and she continues to suffer mental and emotional consequences. No one rebutted this evidence, which the jury obviously found persuasive. We affirm the awards.

JUROR BIAS
One of the prospective jurors revealed on voir dire that she knew White, felt that big companies discriminated against blacks (White is black), could not be fair, had already made up her mind, and believed that supervisors would lie to protect employers. Monsanto and McDermott challenged the juror for cause. The judge, in attempting to rehabilitate the juror, got her to agree that she "can follow the law, whatever partiality you have, even though you know the lady [White], can you make up your own mind no matter what the consequence are and make your own decision and be your own person." The challenge for cause was denied, and Monsanto and McDermott had to use a peremptory to keep this juror off the jury. They now argue that, since the decision in favor of White was rendered nine to three, they were prejudiced by having to use a peremptory challenge to exclude this juror rather than another. We disagree.
La.C.C.P. art. 1765 permits a juror to be challenged for cause "[w]hen the juror has formed an opinion in the case or is not otherwise impartial" or "when the relations whether by blood, marriage, employment, friendship or enmity between the juror and any party or his attorney are such that it must be reasonably believed that they would influence the juror in coming to a verdict." We believe that the judge adequately rehabilitated this juror, since she ultimately told him that she could follow the law, make up her own mind no matter what the consequences would be, make her own decision and be her own person.
"The trial judge is vested with broad discretion in ruling on a challenge for cause which ruling will not be disturbed on appeal absent a showing of abuse of that discretion." State v. Sylvester, 400 So.2d 640, 643 (La.1981). Accord: Bernard v. Richoux, 464 So.2d 856 (La.App. 5th Cir. 1985). We see no abuse of that discretion.

JURY INSTRUCTIONS
Monsanto and McDermott argue that the judge improperly instructed the jury on intentional infliction of emotional distress. There were several different instructions relating to this tort.
The jury asked for clarification of the terms "intentional" and "emotional distress" during its deliberations. In responding to this question, the judge repeated his instructions. Upon request for clarification in writing, the judge again repeated these instructions.
In this case, the basic standard applicable is one of an intentional act. In this case, the basic standard applicable to defendant is that he must refrain from intentional invasions of, or interference with, the legal interest of the plaintiff. By intent in this context is meant the purpose or state of mind with which the person acts. Ordinarily, it is reasonable to conclude that a person intends the natural and possible consequences of the acts which he does knowingly. Thus, although you may find intent was present, if the defendant desired to cause the consequences of his act, you may also find intent present if you conclude that the defendant must have known that the consequences of his act were virtually certain to result.
. . . .
The law recognizes that harmful conduct is considered more reprehensible or culpable if it is intentional in nature.
To recover for the intentional infliction of emotional distress, the plaintiff must prove by a preponderance of the evidence that the defendants, by extreme and outrageous conduct, intentionally caused emotional distress.
Even if the defendant, Gary McDermott, intended no more than temporary emotional upset in this case, he nevertheless may be liable for the intentional infliction of emotional distress if you find that he acted intentionally so as to invade the legal interest of Irma White.

*227 Damages for the intentional infliction of emotional distress are recoverable where both, A, the defendant either intends to bring about mental anguish on the part of the plaintiff or realizes to a virtual certainty that mental anguish will occur; and B, the defendant's conduct should be characterized as outrageous.
We hold that these instructions were a correct statement of the law and do not believe the judge erred. Steadman v. South Central Bell Telephone Co., supra; Caudle v. Belts, 512 So.2d 389 (La.1987); Heine v. Adams, 464 So.2d 836 (La.App. 5th Cir.1985), writ denied 466 So.2d 1304 (La.1985); Restatement, supra.

CONCLUSION
We affirm the judgment of the trial court, finding Gary McDermott and Monsanto Company liable to Irma White in the amount of $60,000.00, plus costs, interest, and expert witness fees. McDermott and Monsanto must pay the costs of this appeal.
AFFIRMED.
KLIEBERT, J., dissents.
KLIEBERT, Judge, dissenting.
I agree the actions of the supervisor were deplorable and actionable. However, I believe an award of $60,000.00 is more punitive than compensatory and for that reason would substantially reduce the amount of the award.