CARAWAY, J.,
dissenting.
pThe trial court in this case erroneously and prematurely dismissed the plaintiffs case on the finding that Ridley was never proven to be an employee of the Town. Therefore, the trial court never made any fact ruling concerning the Town’s vicarious liability for its employee’s intentional tort. Instead of remanding to the trier-of-fact for the trial’s continuance, the majority, outside of the authority of an appellate court, has now stepped in as factfinder and made a fact sensitive ruling against vicarious liability. Under any common sense analysis, the plaintiff certainly proved that after riding into the scrap yard on the Town’s backhoe, Ridley could be expected by his employer to act to confront any person misusing the Town’s scrap yard or trespassing on his employer’s property. Out of that employment-rooted undertaking, the intentional tort occurred.
At the time of this encounter, Perry Wolfe was an 87-year-old who had hearing and vision problems. He testified that he had lived across the street from the scrap yard for eighteen years. The gate to the scrap yard was open, and Wolfe had been in the scrap yard on numerous occasions in the past.
Wolfe testified to two encounters with Ridley that day. While Wolfe was digging sawdust, Ridley first approached him, “fussing” about Wolfe's activities and advising Wolfe to leave the property. Wolfe, who was well acquainted with the mayor and believed he was allowed in the scrap yard, told Ridley to call the police. Ridley then grabbed Wolfe’s shovel, turned Wolfe around, but said nothing as the men were first face to face. Wolfe 12states that Rid-ley then left the area as Wolfe continued digging, retrieved a long scrap pipe from another part of the yard, and returned for a second encounter with Wolfe. Again, Ridley grabbed Wolfe’s shovel, turning him around. At that point, Wolfe admits pushing Ridley back to regain control of his shovel. As Wolfe turned back to shovel the sawdust, he was hit by Ridley with the pipe and lmocked to the ground. Wolfe denied making any racial slur toward Ridley.
While the majority cites the four-factor test of this state’s leading case, LeBrane v. Lewis, 292 So.2d 216 (La.1974), it seems to elevate the concept of a person’s employment duties to a measure where no employer could ever be vicariously liable for an employee’s on-the-job intentional tort. To be clear, an employee never has an employment duty to be an intentional tort-feasor. Therefore, what Ridley did to this elderly man was not owed as Ridley’s duty to the Town. Ridley did owe a duty to recognize any trespasser abusing his employer’s property and to deal with the problem in some manner on the Town’s *45 behalf. Ridley chose to confront Wolfe and ask him to leave. I believe that such initial confrontation and inquiry are reasonably expected employee actions in many employment settings. Therefore, I believe that a finder-of-fact might reasonably conclude that Ridley was acting primarily in an employment-rooted setting, carrying out an action for his employer’s benefit that was not motivated by purely personal considerations before the changeover to violence. The intentional tort was arguably incidental to Ridley’s performance in his job.
Various cases involving a similarly overzealous defense of the |semployer’s business have resulted in vicarious liability under the LeBrane test. In Williams v. Tastee Donuts, Inc., 93-883 (La.App. 5th Cir.5/11/94), 638 So.2d 255, writ denied, 94-1530 (La.9/23/94), 642 So.2d 1299, the cook left the kitchen upon hearing a sharp exchange between two customers and his co-employee working the counter. The cook continued the argument before shooting the unarmed customers. Affirming a judgment which assessed the employer with vicarious liability, the court of appeal observed:
Palmer’s duties went beyond cutting donuts. He was authorized to assist with customers and to help the counter girl when needed.
Id. at 257.
In Campbell v. Mouton, 412 So.2d 191 (La.App. 3d Cir.1982), writ denied, 415 So.2d 954 (La.1982), the employee was a bartender who fought a patron and injured him with a knife. The employer argued that the bartender had no employment duty to be the bouncer for the bar. Nevertheless, the appellate court affirmed the jury’s conclusion for vicarious liability, stating that “[i]t is not unusual for a bartender to be charged with the responsibility of maintaining order in the bar as part of his duties.” Id. at 194.
In an early case from this court, Starnes v. Monsour’s No. 4, 30 So.2d 135 (La.App. 2d Cir.1947), another bartender forcefully ejected a patron causing serious injury. In that employment setting, the bartender disobeyed his employer’s order to always call a policeman in the case of unruly patrons. Nevertheless, the court determined that the employee was acting to |4promote the business interests of his employer and affirmed the trial court’s finding of vicarious liability.
The trial court did not address the fact issue of whether Ridley’s intentional tort stemmed from actions which were primarily employment rooted. The majority now makes that fact determination when the evidence reasonably suggests that Ridley was acting to protect his employer’s property. I would remand the case and let the appropriate trier-of-faet decide.