## No. 10,008.

HENRY E. WILLIAMS VS. PULLMAN PALACE CAR COMPANY ET AL.

The obligation of a sleeping car company for injury to a stranger who enters the car for the purpose of asking the privilege of washing his hands and is there, wantonly and without provocation, assaulted and beaten by the porter of the car, is not governed by the principles regulating the liability of common carriers, under the contract of carriage, for like assaults committed by their servants on their passengers. The two cases discriminated and authorities reviewed.

The obligation of the company in such a case being independent of any contractual relation, is governed by the general principle of the law of master and servant common to all systems of law and formulated in Louisiana Civil Code as extending to all "damage occasioned by their servants in the exercise of the functions in which they are employed."

The earlier doctrine that "in general a master is liable for the fault or negligence of the servant, but not for his wilful wrong or trespass,". has been greatly modified in modern

jurisprudence, which places the test of the master's liability, not in the motive of the servant or in the character of the wrong, but in the inquiry whether the act done was something which his employment contemplated and which, if properly and lawfully done, would have been within the scope of his functions.

The facts that the party injured was not a trespasser, but was lawfully on defendant's premises and was properly dealing with defendant's servant *as* a servant, do not suffice to fix defendant's liability, if the assault was wanton and entirely foreign to the functions committed to the servant; otherwise a bank, or a merchant, or a householder, would be liable for wanton assaults committed by their clerks or servants upon customers or visitors, which liability would clearly not exist unless the masters were guilty of fault in employing so dangerous a servant.

The evidence establishes that the porter offending in this case had been in defendant's employment for three years, and had always conducted himself properly and bore a good character for amiability, sobriety and politeness; that porters are mere menial servants, having no police authority whatever, and no connection with the enforcement of the rules of the service except to report violations of them to the conductor, and that he had no authority to use violence towards any person for any purpose whatever. Hence this wanton assault was entirely foreign to the functions of his employment, and defendant cannot be held responsible therefor.

Ratification of an unauthorized and unlawful act can only be inferred from acts which evince clearly and unequivocally the intention to ratify and not from acts which may be readily and satisfactorily explained without involving such intention. In this case, there being no witnesses, and plaintiff and the porter giving very different accounts of the affair, ratification of the misconduct imputed by plaintiff cannot be inferred from the retention of the porter, when the defendant so acted because it honestly believed the latter and thought it just to maintain the *status quo* at least until judicial determination of the conflict. Nor is the case affected by the fact that the porter was criminally convicted of assault and battery, when in such a trial the porter was not heard as a witness in his own defense, and when he might have been so convicted on evidence falling far short of the outrage charged by plaintiff.

APPEAL from the Civil District Court for the Parish of Orleans. *Tissot*, J.

*W. S. Benedict* and *Read & Goodale* for Plaintiff and Appellee.

*Alfred Ennis* and *Percy Roberts* for Defendant and Appellant.

The opinion of the Court was delivered by

FENNER, J.    This is an action for damages, for an injury inflicted by a servant of the defendant employed as porter on one of its cars.

Plaintiff alleges that he had purchased a ticket and was a passenger on a train of the Louisville, New Orleans and Texas Railway Company between Zacharie Station and Baton Rouge, in this State; that, having soiled his hands, he went to the wash basin in the ordinary coach of the train to cleanse them, but found there was no water, and on application to a porter or brakeman of the car, he was told, "just step back in the sleeper and you will find water, towels, comb and brush;" that thereupon he went back to the sleeper, the door of which

was opened by the porter of the sleeping car, stepped just within the door, and asked said porter if he could wash his hands, when the latter replied in a rude and insulting manner : "Well, sir, if you do, you will pay for it;" that plaintiff jestingly and good-humoredly replied : " You would not think of charging a man anything to wash, when we have so much water in this country ?" *whereupon, before plaintiff made any further advance in the car, the said porter, John Wiley, suddenly, with a jerk, pulled down plaintiff's hat over his eyes and with some blunt instrument struck petitioner a violent blow on the head, cutting through the hat into the scalp, making a ghastly wound and knocking your petitioner senseless out on the platform of the car, where he lay at the imminent peril of his life (the train going at full speed) until rescued by persons who saw him from the adjoining car, the said Wiley having, as soon as he had thus disposed of petitioner, slammed and fastened the door of the coach, leaving him to his fate.*

Such are the allegations of the petition, confirmed, almost *totidem verbis,* by the testimony of plaintiff, who is shown by the record to be a gentleman of social position and excellent character.

The porter, of course, tells a very different story, which, if true, would place plaintiff in such precedent fault as would clearly bar his action for damages, even if it did not fully justify the assault and battery in the eyes of the criminal law.

But the jury evidently believed the plaintiff, and, without needless comment, the evidence in the record furnishes no ground for reversing their conclusion, notwithstanding the almost incredible character of the statement.

The case presents for our determination two questions, viz :

1. Is the defendant responsible for such acts of its servants as those complained of ?

2. If not originally reliable, has it become so, in this case, by ratification of its servant's conduct ?

I.

Plaintiff was not a passenger on defendant's car, and there was no contractual relation of any kind between them.

The case, therefore, does not fall within that numerous class of authorities which enforce the obligations of the common carrier, under its contract of carriage, towards its passengers.

Counsel for plaintiff has rested the law of his case almost wholly upon a recent learned decision of the Supreme Court of Maine, where a Railroad Company was held responsible for insult, abuse and assault by its brakeman upon a passenger, almost as wanton and unprovoked

as that charged in the instant case.　But a reference to the case shows that the responsibility was imposed solely on the ground of the contract of carriage. Thus, after stating the evidence, the Court said: "Upon this evidence the defendants contend that they are not liable, "because, as they say, the brakeman's assault upon the plaintiff was "wilful and malicious and was not, directly or indirectly, authorized "by them. They say the substance of the whole case is this, that 'the "master is not responsible as a trespasser, unless, by direct or implied "authority to the servant, he consents to the unlawful act.' The fal- "lacy of this argument, when applied to the common carrier of pass- "engers, consists in not discriminating between the obligation which "he is under to his passenger and the duty which he owes to a "stranger. It may be true that if the carrier's servant wilfully and "maliciously assaults a stranger, the master will not be liable; but "the law is otherwise when he assaults one of his master's passengers. "The carrier's obligation is to carry his passenger safely and properly, "and to treat him respectfully, and if he intrusts the performance of "this duty to his servants, the law holds him responsible for the manner "in which they execute the trust. He must not only protect his pass- "engers against the violence and insults of strangers and co-passen- "gers, but *a fortiori* against the violence and insults of his own ser- "vants. ＊ ＊ ＊ This liability of the master is very clearly "expressed in a recent case in Massachusetts. The court say that "wherever there is a contract between the master and another person, "the master is responsible for the acts of his servant in executing that "contract, although the act is fraudulent and done without his con- "sent. Howe vs. Newmarch, 12 Allen 55. And Messrs. Angell & "Ames, in their Work on Corporations, §388, say: 'A distinction "exists as to the liability of a corporation for the wilful tort of its "servant toward one to whom the corporation owes no duty except "such as each citizen owes to every other; and that towards one who "has entered into some peculiar contract with the corporation by "which such duty is increased; thus it has been held that a railroad "corporation is liable for the wilful tort of its servants whereby a "passenger on the train is injured.'" Goddard vs. R. R. Co., 57 Maine 202.

The Court in its opinion refers to many authorities, all tending in the same direction, but further quotation is needless. Perhaps the principle was never more clearly expressed or placed on a sounder basis of reason than by our own court which has thus formulated it: "When the proprietors of vessels use them for the purpose of carry-

ing passengers for money, they subject themselves to the same responsibility for a breach of duty in their officers to those passengers, as they would for their misconduct in regard to merchandise committed to their care. No satisfactory distinction can be drawn between the two cases." Keene vs. Lizardi, 5 La. 431.

The absence of any contractual relation between plaintiff and defendant removes this case from the application of the line of authorities above indicated. The responsibility of defendant, if it exists, must be found in the general principles of the law of master and servant as applicable to all masters similarly situated.

The Civil Code of this State enunciates the rule of *respondent superior* in terms which exactly correspond to the rule of the common as well as the civil law: "Masters and employers are answerable for the damage occasioned by their servants and overseers, in the exercise of the functions in which they are employed."

As is well said by Judge Cooley: "It will readily occur to every mind that the master cannot, in reason, be held responsible generally for whatever wrongful conduct a servant may be guilty of. A liability so extensive would make him guarantor of the servant's good conduct, and would put him under a responsibility which prudent men would hesitate to assume."

The earlier doctrine of the common law affirmed the rule that "in general a master is liable for the fault or negligence of the servant, but not for his willful wrong or trespass." 2 Hilliard on torts, p. 524; McManus vs. Crickett, 1 East. 106; Sharrod vs. Railway, 4 Exch. 580; Roe vs. Birkenhead, 7 Exch. 36; Wright vs. Wilcox, 19 Wend. 345.

But the tendency of later jurisprudence is to discard this distinction and to recognize the liability of the master not only for the negligence of his servants, but also for their torts, when done within the scope of their employment, or in the language of the Code, "in the exercise of the functions in which they are employed." It matters not that the acts are willful and tortious, nor that they have been committed in disobedience of the express orders of the master; if they have been done in the exercise of the functions of the employment, the master is responsible. "The test of the master's responsibility," says Judge Cooley, "is not the motive of the servant, but whether that which he did was something which his employment contemplated, and something which, if he should do it lawfully, he might do in the employer's name." Cooley on Torts, p. 536.

The great difficulty in applying these principles lies in defining what acts properly fall within the scope of the servant's employment·

The evidence in this case establishes that the porters employed in defendant's service are mere menials employed to clean up the car and keep it in order, and to wait upon the passengers, having no police authority whatever, and no connection with the enforcement of the rules of the service except to report violations of them to the conductor. Anything more completely outside of "the functions in which he was employed," than the assault committed on the plaintiff could hardly be conceived. If it had been his duty forcibly to prevent the plaintiff from entering the car, or to put him out at all, and in performing this duty he had used wanton and needless violence, inflicting injury, defendant might have been responsible. But he had no such duty or authority. We do not lose sight of the fact that plaintiff was not a trespasser, but had a right to enter the car for the purpose of asking permission to wash his hands, or of trying to hire the privilege, and that in addressing the porter he was dealing with him as a servant of the company. This emphasizes the outrage to which he was subjected, but would be a dangerous ground for holding the employer responsible. A person has a right to enter a bank for the purpose of collecting a check, and to present it to the paying teller for payment; but, if, on such presentation, the teller should leap over the counter and knock him down, surely such an act would not subject the bank to liability. So one may lawfully enter a store and deal with any clerk with reference to the purchase of goods, but, if, on some dispute, the clerk should commit assault and battery upon him, the merchant would not be responsible therefor. Or if one, on lawful business, should knock at the door of any private house, and on asking the servant who answered the call for permission to see the master, the servant should assault and beat him, would the master be responsible?

Clearly, in all such cases, the lawfulness of the party's conduct and the fact that the injury was received while he was properly dealing with the servant as a servant, would not suffice to bind the master, unless the latter had expressly or impliedly authorized the act, or had been guilty of some fault in knowingly employing so dangerous a servant.

We cannot distinguish this case from the one above indicated.

The evidence exonerates the defendant from any fault in the employment of Wiley as a porter. He had been in their employment for three years, and during all that time had borne a good character for sobriety, amiability and politeness.

A case quite similar to this is found in our own reports, where the

lock-keeper of a canal whose duties were to keep the locks, to open and close them, and to collect the tolls, assaulted and cruelly beat an oyster-trader under the pretext that he had not paid his toll, and the Canal Company was sued for these tortious acts, but this Court rejected the demand, saying: "When an agent, losing sight of the object for which he is employed, commits wrong and causes damage, the principal is no more answerable for them than any stranger; as to such wrongs, the agent must be considered as acting of his own will, and not in the course of his employment, or under any implied authority of his principal." Ware vs Barataria, 15 La. 169.

In another case it was said: "The rule seems to be that when the agent, acting in the capacity bestowed upon him by the corporation and in the discharge of some duty or employment directed by the employer or incidental to his situation, does an act that causes damage, the corporation is responsible; but when the agent does any act of his own free will, without reference to his functions as a corporate agent, the corporation is not responsible. For example, if a person should go into a banking house or an insurance office and there get into a difficulty or dispute in relation to business of the corporation with an agent or officer, and an assault and battery should ensue, we suppose it would not be seriously contended that the bank was answerable in damages, unless there was some express recognition of the act." Etting vs. Commercial Bank, 7 Rob. 459: Dyer vs. Riely, 28 Ann. 6; Pierce on Railroads, p. 279; Field on Corporations, §524, 623; Isaacs vs. Third Av. R. R. Co., 47 N. Y. 122; R. R. Co. vs. Baum, 25 Ind. 72, R. R. Co. vs. Harrison, 48 Miss. 112; Flower vs. R. R. Co., 69 Penn. St. 210.

Under these views, while we share plaintiff's indignation at the outrage committed on him, we cannot fix the duty of reparation on the innocent defendant, upon whom it is not imposed by the letter or spirit of the law.

II.

It is claimed, however, that if not originally responsible, the defendant has ratified the act of the porter by retaining him in its employ after knowledge of his conduct.

It is incredible that the company should have intended to approve or ratify such conduct as that attributed to the porter.

Ratification can only be inferred from acts which evince clearly and unequivocally the intention to ratify, and not from acts which may be readily and satisfactorily explained without involving any such intention. Breaux vs. Saddie, 39 Ann., and authorities there cited.

Now, in this case, there were no witnesses to the incident except the parties thereto. They gave very different accounts of it. The defendant, prompted by its previous knowledge of the porter, believed his story and did not believe that of plaintiff. It illustrated the sincerity of its conviction by the very fact of retaining the porter, for if, after this incident, the porter had again committed a similar outrage, defendant would undoubtedly have subjected itself to a much more dangerous claim for damages.

If it honestly believed that the porter was innocent of the outrageous conduct charged against him, his retention was, under such belief, an act of courageous justice, and certainly presents no element of ratification.

Nor is the case affected by the fact that the porter was criminally prosecuted and convicted for assault and battery. His own testimony was not, under the law then in force, admissible in that prosecution. And, moreover, he might have been convicted on evidence falling far short of the outrage charged by plaintiff. The porter had been discharged for other causes, before the trial of this suit, and we think the defendant company cannot be charged with ratification of such an outrage, because, in the conflict between the statements of the parties, it believed its own servant, and, at all events, thought it just to preserve the *status quo* until the judicial determination of the dispute.

It is, therefore, ordered, adjudged and decreed that the verdict of the jury and the judgment appealed from be annulled, avoided and reversed, and there be now judgment in favor of defendant and rejecting the demand of plaintiff at his cost in both courts.