LAND, J.
On December 22, 1916, Arthur J. Mendel, age 22 years, was shot and killed by Ferdinand Seebold, an employee of defendant company, which is engaged in conducting a coal business in the city of New Orleans.
Plaintiffs are the father and mother of deceased, and have instituted the . present suit to recover the sum of $50,000 as damages against defendant company, on the ground that said company should respond in damages to them, because the death of their son was occasioned by Seebold, a watchman of said company, while acting within the scope, or the apparent scope, of his employment.
*1057 The assistant manager of defendant company testified that Seehold was hired as a stable and yax-d man, and that his duties were to look after the feeding of the mules, to clean up the piles-of coal and around the yard, to oversee the loading of the wagons, and the unloading of coal cars in the yard.
The coal yard of defendant company, while under the general supervision of the assistant manager was directly under that of the coal clerk, who testified that Seebold was subject to his immediate orders, and that it was a part of his duties to see that nobody touched the coal.
The assistant manager also stated, during the course of his testimony, that it was See-bold’s duty to watch the coal cars and to look out for the company’s interests. In other words, it was within the scope of the employment of Seebold to protect the property of his master.
It must be conceded that masters and employers are answerable for the damage occasioned by their servants, in the exercise of the functions in which they are employed. R. C. O. art. 2320.
While defendant company admits in its answer that the son of plaintiffs was shot and killed by Ferdinand Seebold, respondent denies that the said Seebold was acting, at the time of the shooting, within the scope, or the apparent scope, of his employment. This defense, in oxxr opinion, is fully established by the testimony of the witnesses of plaintiffs themselves.
The facts of this case, as stated by plaintiffs’ own witnesses, are substantially as follows: Two women were picking up coal out of a street gutter, into which it had fall■en from a coal car belonging to defendant company. Arthur Mendel chanced to be' passing by, ¿nd stopped and spoke to them. At this juncture, Seebold, watchman of defendant company, approached, and ordered the women, with an oath, to, “Put that coal jback.” Arthur Mendel, interceding, replied: “Don’t curse them ladies.” The women immediately dumped the coal into the gutter, where they had found it, and with their empty buckets in -their hands, began to walk away. Seebold then left, going in the direction of the coal yard of defendant company, and, as he was leaving, said: “Wait -till I come back. I will teach you, if you can steal the company’s coal.” He returned shortly, and, stopping near the women and Mendel, who were still on the street, called out to them: “Gome on down here now and steal some more coal.” As Seebold repeated this invitation, «Mendel asked' one of the women ■if Seebold was talking to him, and they replied that they did not know. When this invitation was repeated the third tipie, Mendel advanced towardsl Seebold, who- was standing at the corner of the street, and said to him: “You mean to say I was stealing that coal?” Seebold replied: “jSTo, but go steal some now.” When Mendel came up, Seebold seized him in the collar, and shoved him back. The men then clinched, and during the mutual combat Mendel was shot and killed.
This state of facts, as detailed by plaintiffs’ witnesses, shows clearly that the shooting of Mendel occurred after Seebold had discharged his duty to his employer in the px-otection of his property. The women had restored the coal to its owner, and had left the scene. Seebold had also departed. Before Seebold returned, the women and Mendel had ceased discussing the incident about the coal, and the conversation had drifted to Christmas trees. In the minds of all three of them the incident as to the coal was a closed chapter.
Seebold, unquestionably, had not been employed by defendant company to invite peopie to come upon its premises and steal its coal. Seebold returned to the scene, not for the purpose of protecting the property of *1059 his master, for that had been accomplished already. He returned, evidently, because he had become angered at what he conceived to be the insolent interference. of Mendel, who had commanded him to stop his abuse of the women. The difficulty that ensued was one of Seebold’s own seeking, and was totally disconnected with the functions he had been employed to discharge. It was his own private quarrel, for the consequences of which the law does not attach to his master either culpability or liability in any degree.
The testimony of plaintiffs shows that Mendel had not taken, or attempted to take, any of the property of defendant company. He was not shot and killed by Seebold, while in the act of trespassing upon the property which it was the duty of Seebold', as an employee of defendant company, to protect. Defendant therefore is not liable to plaintiffs in damages for Seebold’s act in faking the life of their son;
The judgment of the lower court rejecting plaintiffs’ demand is, in our opinion, correct, and is affirmed .at the cost of the appellants.