## BEARMAN v. SOUTHERN BELL TELEPHONE & TELEGRAPH CO.

(May 11, 1931. Opinion and Decree.)
(May 25, 1931. Rehearing Refused.)
(July 17, 1931. Writs of Certiorari and Review Refused by Supreme Court.)

Richard A. Dowling and Gerald Netter, of New Orleans, attorneys for plaintiff, appellant.

J. C. Henriques, Jr., and J. C. Henriques, Sr., of New Orleans, atorneys for defendant, appellee.

HIGGINS, J. This is a suit by a father in behalf of his minor son, claiming damages alleged to have been sustained by the child and medical expenses resulting from a whipping administered by an employee of the defendant, while acting in the scope and course of his employment:

The petition charges that on Sunday, May 12, 1929, at 3 o'clock p. m., plaintiff's minor child was playing ball on the sidewalk in front of the Galvez telephone exchange, when a private watchman of the defendant company assaulted and beat the boy and drove him from the sidewalk in front of the building, causing the injuries complained of.

The defendant filed an exception of no right or cause of action and then, in the alternative, in the event the exception was overruled, answered the petition denying liability. The exception of no cause or right of action was referred to the merits and the whole matter tried at one time, resulting in a judgment in favor of the defendant dismissing the suit. Plaintiff has appealed.

The exception of no right or cause of action is leveled at an insufficiency of allegations in the petition, and, as the plaintiff would have been entitled to amend, it is therefore overruled, particularly since all of the facts of the case are now before us and defendant has not been prejudiced. Francis v. Barbazon, 10 La. App. 55, 120 So. 427; Blake v. Jefferson-St. Charles Transfer Co., 8 La. App. 310.

The only eyewitnesses to the alleged beating are the boy in whose behalf the suit is brought and the employee of the defendant company who is said to have whipped him.

The facts of the case, as we gather them from the record, are that plaintiff's nine-year-old son was playing with eight or ten boys in front of the defendant's garage or station where it repaired and supplied automobiles used in its business. Schackai was the sole and only employee on duty at the station on the Sunday afternoon in question and was engaged in the repair of a tire on one of the company's trucks. The boys came into the garage and interfered with and annoyed him while he was at work. He ordered them out and a little later they came back. He then testifies as follows:

"Q. What happened out there that day?
"A. I was working in the back of the garage and I was going in the oil room to get something and when I came out these boys were there and I drove them out and they came in again. There were eight or ten of them and I told them to get out and they got out and came back. They were spilling gas on the floor and they all got out except this one and he called me an S. B., and I picked him up and spanked him."

The plaintiff contends that a principal is liable for damages where a watchman, or some one employed to protect his property, injures any one in the course and scope of his duties, while protecting the property. On the other hand, the defendant contends that a principal can only be held responsible for acts of an agent when acting within the scope of his authority and in the course of his employment, but if he steps aside from his employment and engages in a personal controversy, the master cannot be held liable.

In the case of Godchaux v. Texas & Pacific Ry. Co., 144 La. 1041, 81 So. 706, 707,

the Supreme Court laid down the test to be applied to each particular case in the following language:

"The responsibility of the master for a tort committed by his servant does not depend upon whether the tort was committed in the course of the employment; the test is whether the tort was committed within the scope of the employment. The doctrine of the common law is the same as the rule expressed in the Civil Code, viz.: Masters are answerable for the damages occasioned by the fault of their servants, 'in the exercise of the functions in which they are employed.' R. C. C. arts. 2315, 2317, 2320. The principle is defined clearly enough. The only trouble is in applying the rule to the facts in each case; for it is only a question of fact whether, in a given case, a tort that has been committed in the course of a servant's employment was within the scope of his employment or authority, either express or implied.

"In this case, for example, if it had been within the scope of the agent's authority or employment to eject a disturber from the employer's premises, the employer would be responsible for the agent's wrongful or excessive manner of exercising the authority."

Referring again to the record, we observe that the defendant's evidence shows that, during the weekdays, there were three or four mechanics and a watchman on duty at the service station, but on Sunday there was only one mechanic, who was solely in charge of the place. There was no other representative of the company on duty at the place at the time of the alleged beating. It would appear to us that it was the duty of the mechanic or man in charge—call him what you may—to protect the company's property and to keep out trespassers, and we feel that if he had stood by and permitted the boys to waste the gasoline and had not attempted to stop them and put them out, his

employer would have discharged him. This is to be implied from the position he occupied. From the record it appears that the boy had never had any previous personal encounters with the defendant's employee and that there was no ill feeling between them.

We have come to the conclusion that the employee was acting within the scope of his employment, or "in the exercise of the functions in which he was employed" (article 2320, R. C. C.), in stopping the boys from wasting the gasoline and ejecting them from the premises. The fact that he acted unwisely or went too far in so doing does not take the act out of the scope of the employment. Even illegal methods adopted by an employee will not excuse his employer when the acts are done in the scope of his employment.

In the case of Godchaux v. Texas & Pac. Ry. Co., supra, the Supreme Court said:

"The decision was only an affirmance of the doctrine, now well settled, that the master is answerable in damages for an injury resulting from his servant's willful and deliberate selection of an illegal method of performing a duty that would be, if properly performed, within the scope of his employment."

In the case of Williams v. Pullman Palace Car Co., 40 La. Ann. 91, 3 So. 631, 634, 8 Am. St. Rep. 512, the court said:

"The earlier doctrine of the common law affirmed the rule that, 'in general, the master is liable for the fault or negligence of the servant, but not for his willful wrong or trespass.' 2 Hil. Torts, p. 524; McManus v. Crickett, 1 East, 106; Sharrod v. Railway, 4 Exch. 580; Roe v. Birkenhead, 7 Exch. 36; Wright v. Wilcox, 19 Wend. (N. Y.) 345 [32 Am. Dec. 507].

"But the tendency of later jurisprudence is to discard this distinction, and to recognize the liability of the master not only

for the negligence of his servants, but also for their torts, when done within the scope of their employment, or, in the language of the Code, 'in the exercise of the functions in which they are employed.' It matters not that the acts are willful and tortious, nor that they have been committed in disobedience of the express orders of the master; if they have been done in the exercise of the functions of the employment, the master is responsible. 'The test of the master's responsibility,' says Judge Cooley, 'is not the motive of the servant, but whether that which he did was something which his employment contemplated, and something which, if he should do it lawfully, he might do in the employer's name.' Cooley, Torts, p. 536."

The following language from Valley v. Clay, 151 La. 710, 92 So. 308, 309, is likewise of interest:

"If the service be performed in an unlawful, or even a criminal manner, the master is liable so long as the thing done forms a part of the servant's duties. Nash v. Longville Lumber Co., 148 La. 943, 88 So. 226."

See, also, the following cases and authorities: May v. Yellow Cab Co., 164 La. 920, 114 So. 836; Moore v. Day, 3 La. App. 575; Hale v. Gilliland, 151 La. 500, 91 So. 853; Nash v. Longville Lumber Co., 148 La. 943, 88 So. 226; Matthews v. Otis Mfg. Co., 142 La. 88, 76 So. 249; Wallace v. Jno. A. Casey Co., 132 App. Div. 35, 116 N. Y. S. 394; Ware v. Barataria & Lafourche Canal Co., 15 La. 171, 35 Am. Dec. 189; Lafitte v. N. O. City & Lake R. R. Co., 43 La. Ann. 36, 8 So. 701, 12 L. R. A. 337; Bright v. Bell et al., 113 La. 811, 37 So. 764; Gaillardet v. Demaries, 18 La. 492; Graham v. Street Railroad Co., 47 La. Ann. 1657, 18 So. 707, 49 Am. St. Rep. 436; Mendel v. W. G. Coyle Co., 153 La. 1056, 97 So. 38; McDermott v. Brewing Co., 105 La. 124, 29 So. 498, 52 L. R. A. 684, 83 Am. St. Rep. 225; Rousseau v. Tex. & Pac. R. R. et al., 4 La. App. 691; Vincent v. M. L. & T. R. R. & S. S. Co., 140 La. 1027, 74 So. 541; Gann v. Great Sou. Lumber Co., 131 La. 400, 59 So. 830; Vallon v. I. C. R. R. Co., No. 9005 of Court of Appeal, Par. of Orleans, decided May 28, 1923. See Louisiana and Southern Digest. Corpus Juris, vol. 2, verbum "Agency," p. 854; Ballentine's Law Dictionary: "Scope of Employment" and "Course of Employment."

As to the quantum of damages the doctor's testimony shows that the boy had some bruises on his foot and his thigh; that he had to bandage the foot and give some wet applications, a sedative, and some salve; that he made three visits to the boy at home and that the boy called twice at his office, for which he rendered a bill of $13; that the boy was confined to his bed for several days. We have concluded to allow the sum of $100 for the personal injuries.

Since the father did not sue individually for the medical expenses, but only in behalf of the minor child, the bill of $13 therefor cannot be allowed.

For the reasons assigned it is ordered, adjudged, and decreed that the judgment appealed from be and it is annulled, avoided, and reversed, and it is now ordered that there be judgment in favor of Edward Bearman, in behalf of and for the use and benefit of his minor son, Albert Bearman, plaintiff herein, and against the defendant, Southern Bell Telephone & Telegraph Company, in the sum of $100, with legal interest from judicial demand until paid. Defendant to pay the costs of court.