134 So.2d 407 (1961)
Frank MARIE
v.
DENNIS SHEEN TRANSFER, INC.
No. 21317.
Court of Appeal of Louisiana, Fourth Circuit.
November 6, 1961.
*408 Ralph N. Jackson, Jackson & Hess, New Orleans, for plaintiff, Frank Marie.
Numa V. Bertel, Jr., Hammett & Bertel, New Orleans, for Dennis Sheen Transfer, Inc., defendant.
Michael J. Molony, Jr., Jones, Walker, Waechter, Poitevent, Carrère & Denègre, New Orleans, for Standard Stevedoring Co., Inc., and Travelers Ins. Co.
Before McBRIDE, REGAN and JOHNSON, JJ.
JOHNSON, Judge.
The plaintiff was employed by Standard Stevedoring Company, Inc., at the Toulouse Street wharf in New Orleans as a clerk and checker. Part of his duties was to check the freight as it is received and unloaded. A chronological recitation of the pleadings herein may be helpful.
*409 On June 7, 1957, a truck belonging to Dennis Sheen Transfer, Inc., arrived at the wharf with thirty-two bales of cotton to be unloaded. The plaintiff directed the driver, a Negro named Francois, employed by Dennis Sheen Transfer, Inc., to place the truck at a certain spot. During the process of unloading the truck, the plaintiff and Francois got into a fight, in the course of which the thumb of plaintiff's left hand was fractured.
Plaintiff originally brought a tort suit on December 6, 1957, for damages against Dennis Sheen Transfer, Inc., alleging that Francois attached the plaintiff, in which attack plaintiff sustained permanent injury and malformation of his left thumb and that said damages resulted from the fault and negligence of Francois, defendant's employee and agent, in carrying out his employer's business. After an exception of no right or cause of action was overruled, Dennis Sheen Transfer, Inc., filed its answer on February 21, 1958, generally denying plaintiff's allegations and alleging that whatever altercation the plaintiff may have had with defendant's employee, the injury complained of resulting therefrom did not arise out of or in the scope of Francois's employment and that defendant is not liable to the plaintiff.
Plaintiff's first supplemental petition asked for a jury trial and an order issued accordingly. On September 19, 1958, plaintiff filed a second supplemental petition making additional allegations that though plaintiff lost no time from work, his injury had developed into a permanent disability under the compensation law of this state and that he desired to set up an additional cause of action against Standard Stevedoring Company, Inc., for workmen's compensation; that at the time of the accident his wage rate was $100 per week; that the Travelers Insurance Company was his employer's compensation insurer; that his employer and the insurance company were duly notified of the accident and the pendency of this suit; that the Standard Stevedoring Company, Inc., was engaged in a hazardous business and that plaintiff's work was of a hazardous nature; that the accident and injury arose in the course of his employment; that "* * * his injury did not develop nor was it evaluated as a permanent disability until on or about September 20, 1957." Plaintiff therefore prays for judgment against this additional defendant for compensation at $35 per week, "* * * beginning at such time as this Honorable Court may fix and continuing for a period not to exceed four hundred (400) weeks or, alternatively for such other sums and amounts as the Court may direct * * * subject to credit for the amount of any judgment that may be rendered herein against the original defendant, Dennis Sheen Transfer, Inc."
Only the Travelers Insurance Company was served with that second supplemental petition but both the Standard Stevedoring Company, Inc., and the insurance company appeared on November 7, 1958, to plead prescription of one year. On the same day, reserving their rights under the plea of prescription, the said two defendants filed a joint answer to the original and the second supplemental petition, generally denying most of the allegations but admitting plaintiff's employment, rate of pay, insurance coverage, and in Articles 7 and 11, said defendants "admit that the driver and employee of Dennis Sheen Transfer, Inc., Juan Francois, attacked and struck plaintiff on the left hand, fractured his thumb and inflicted other injuries to his body." Said defendants also in Article X-B of that answer said "* * * the accident and injury alleged in plaintiff's original petition occurred while plaintiff was engaged in the course and scope of his employment by Standard Stevedoring Company, Inc."
On November 7, 1958, the Travelers Insurance Company filed its petition of intervention alleging that under the provisions of its compensation insurance policy it had paid $112 in medical expenses for the treatment of plaintiff made necessary by the injuries inflicted by the driver of Dennis Sheen Transfer, Inc., and that said intervenor *410 is subrogated to the extent of any such payment "* * * to all rights of recovery therefor vested by law either in the employer or in any employee claiming under said policy against any third person * * *". (Art. VIII.) Said intervenor prays that it have judgment against the plaintiff, Frank Marie, and defendant, Dennis Sheen Transfer, Inc., decreeing that intervenor be paid by preference out of any judgment rendered in favor of plaintiff against said defendant, the said sum of $112 and the amount of any workmen's compensation benefits which may have been paid by intervenor to Frank Marie, with interest and attorney's fees.
On November 13, 1958, defendant, Dennis Sheen Transfer, Inc., filed an amended answer alleging, in the alternative, that the plaintiff was the aggressor and provoked the altercation between him and defendant's employee.
On November 14, 1958, the plea of prescription was heard by the Court and dismissed.
On November 20, 1958, Standard Stevedoring Company, Inc., and the Travelers Insurance Company filed an amended answer alleging that the accident and injuries complained of were caused by plaintiff's willful intention to injure another person and that plaintiff is precluded from recovering workmen's compensation under the provisions of LSA-R.S. 23:1081(1).
On November 18, 1958, the tort claim was tried before a jury and its verdict was in favor of plaintiff and against Dennis Sheen Transfer, Inc., in the sum of $2,500. The judgment accordingly was signed by the court on December 15, 1958.
On November 21, 1958, defendant, Dennis Sheen Transfer, Inc., filed a motion to set aside the jury verdict and for another trial. On November 28, 1958, that motion was heard and dismissed.
On December 15, 1958, the court signed a separate judgment in favor of plaintiff and against Standard Stevedoring Company, Inc., and Travelers Insurance Company for compensation at the rate of $10 per week for 150 weeks, commencing September 20, 1957, and for all costs. This judgment further decreed that defendants, Standard Stevedoring Company, Inc., and the Travelers Insurance Company "shall be paid by preference out of any amounts recovered by plaintiff from Dennis Sheen Transfer, Inc., or its insurer, the amount of medical expenses paid for treatment of plaintiff's injuries in the sum of $112 and the full amount of this judgment of $1,500." That judgment further decreed that the Travelers Insurance Company have judgment against Dennis Sheen Transfer, Inc., for all court costs expended in connection with this intervention and its costs in this suit. Intervenor's claim for attorneys' fees was denied.
The case is now before this court on appeals by all defendants.
We shall dispose of the tort claim first. While the versions of some of the witnesses are somewhat conflicting, the evidence is neither lengthy nor complicated. The testimony of the plaintiff does not follow strictly the allegations of his petition as to what was said or done and, for that reason, counsel for defendant argued seriously that plaintiff's testimony is not worthy of belief. After fully digesting all the evidence and comparing the statements of the witnesses we gain the impression that plaintiff's testimony is conservative and sensible. Evidently both the jury and the court believed his version of the events and we can find no good reason to do otherwise.
The plaintiff had been in the same employment for eight years and had never had trouble of this kind before. Part of his duties was to assign the help to do different things in order to get the cotton from the truck and stacked on the wharf at the place he designated. On this occasion there were three men on the ground. One was called a header. He took the bales at the truck and placed them on the hand-truck to be rolled away and stacked. The other *411 two men would roll the cotton on the hand-trucks to the place of storage. Francois, the driver of defendant's truck which brought the cotton there, and his helper, both employees of Dennis Sheen Transfer, Inc., were on the truck rolling the bales to the back to be received by the header who, at that time, was working alone. Mr. V. P. Ronan, Chief Clerk for Bloomfield Steamship Company, testified (Tr. 46) that the usual way to unload cotton from a truck is that either the driver of the truck (Francois in this case) or his helper (Williams) gets off the truck and helps the header receive the bales and place them on the hand-truck. In short, it is customary that one man rolls the bales off the truck, two men catch them and two men roll them away.
On this occasion there was only one header on the ground and two men on the truck. Marie told Francois that either he or his helper should come down to the ground to assist the header. Francois refused to do that or to let his helper get off the truck. On his refusal, Marie first asked Francois to call his boss, but Francois would not do that, whereupon Marie told Francois that if one of them did not come off and assist the header on the ground he, Marie, would call Francois's boss. Francois again refused and Marie went to the telephone to call the manager of Dennis Sheen Transfer, Inc., to whom he explained the situation. The manager instructed Marie to tell Francois that if he did not co-operate, to bring the truck in. Marie transmitted that message to Francois at which time Marie was leaning against some cotton about 8 to 10 feet from the truck. Francois jumped off the truck and approached Marie with his hands up in a threatening manner. Marie raised his hands to defend himself and Francois hit Marie and the fight ensued. Marie said that Francois jumped off the truck and approached him so quickly that it took him by surprise and he mostly tried to grab Francois. Marie said he felt the lick on his left hand and Francois also struck him over his eye and on top of his head. When Marie remarked that his hand was broken Francois jumped into the truck and left.
Francois testified that he jumped off the truck to get into the cab and drive the truck away; that when he hit the ground Marie struck him and they had a fight. Francois is supported in that version of the incident by Williams, his helper, who was on the truck. Williams further testified that when Marie came back from the telephone he told Francois that he would not receive any more cotton; that Marie and Francois were cursing each other and that when Francois jumped off the truck Marie hit him first. None of the several other witnesses could throw any light on how the fight started.
A careful reading of the testimony leaves the very definite belief that Francois was in a bad mood from the beginning. When Marie first came from his office with his pad and pencil to check the cotton, Francois was cursing some of the men. Marie asked what the trouble was and nobody would say anything. When Marie told Francois that either he or his helper would have to get on the ground to assist the header, Francois refused with offensive profanity. When Marie asked Francois to call his boss, Francois again refused. When Marie called Francois's boss and brought the message that Francois was either to co-operate or take the truck in, Francois was again abusive and profane and then Francois jumped off the truck and landed on the ground near Marie.
Marie testified that he weighed 140 lbs. and that he didn't have fights because he was getting too old. He said he meets and has dealings with some pretty tough characters on the water front but has never had a fight before in the eight years of his employment there. After this trouble with Francois at the wharf, Marie went immediately with Ronan to the office of Dennis Sheen Transfer, Inc., and reported what had happened to the manager. On this report the manager called the Police to have *412 Francois arrested. We believe that Francois went toward Marie in a belligerent and aggressive manner, and as he threw his fist at Marie, Marie put up his hands in self-defense. It is stipulated that Marie is right-handed. It was his left hand that received the injury.
Counsel for defendants argues two points: that Marie was the aggressor and, for that reason, cannot recover from Dennis Sheen Transfer, Inc., and, granting for the sake of argument, that Francois instigated the fight then his carrying the fight to Marie was not in the scope and course of his employment. We do not believe that Marie was the aggressor. There is no convincing evidence that plaintiff did or said anything of a provocative or aggressive nature and Francois and his helper say that both Marie and Francois were cursing but they did not quote anything said by Marie.
Now, therefore, we turn to counsel's argument that should we determine that Francois was the aggressor in the fight, then whatever he did was outside the scope of his employment. The truck driver asserts that when Marie came back after talking to Francois's employer and transmitted to Francois his employer's instructions either to co-operate or bring the truck in, he was on the truck with some bales of cotton yet unloaded; that he had to get on the ground in order to go to the cab of the truck, get in the cab and drive the truck away. It is somewhat significant that he jumped to the ground right in front of Marie. The deviation in his route to the cab to strike Marie was very slight. Although his striking was unauthorized he was enroute to the cab engaged in his master's business on his master's instruction when the act occurred. It was within the time and at the place of his employment and what he did was clearly incidental thereto. He was in the course of carrying out his employer's instructions and therefore within the scope of his employment. Nash v. Longville Lbr. Co., 146 La. 475, 83 So. 771, 148 La. 943, 88 So. 226; Bearman v. Southern Bell Tel. & Tel. Co., 17 La.App. 89, 134 So. 787; Starnes v. Monsour's No. 4, La. App., 30 So.2d 135. See also the many authorities cited in these cases.
On the question of plaintiff's right to recover compensation from his employer, the claim for compensation was filed by impleading his employer and its insurer as additional parties defendant and as a separate cause of action, after the expiration of one year from the date of the injury.
Plaintiff relies on LSA-R.S. 23:1209 which provides that the year when the period of limitations begins to run is from the date the injury or disability develops. On the day of the accident it was shown by the X-ray and Dr. Pollingue, an orthopedic surgeon, testified that one of the bones of the left thumb was fractured. The doctor applied a cast with a pin through the end of the thumb for traction. The injury was received on Friday and plaintiff returned to work on Monday. He lost no time, did the same work and drew the same pay continuously thereafter. The first cast stayed on three weeks when it was removed and another cast applied without traction. On July 18 that cast was removed and splints applied. When the doctor next saw him on August 7, 1957, he found that healing was taking place with shortening of the thumb. The plaintiff testified that the doctor spoke of this defect in position at that time but thought that the shortening would correct itself. The next X-ray was made on November 11, 1957, at which time the fracture was completely healed. It was at this time that the doctor first determined that the abnormality resulting from the position of the thumb would be permanent. The plaintiff was informed of this situation but the doctor did not make a formal report of the residual or permanent disability until April 9, 1958. This report was based on the X-ray made in November, 1957. The compensation claim was filed in the suit on September 19, 1958, which was well within the year after the time the permanent or residual condition was definitely determined.
*413 This doctor felt that the plaintiff had a permanent residual disability of 10% loss of the use of his left thumb. The doctor said that in spite of this condition the plaintiff had performed and could continue to perform his previous occupation as well as before the injury. The testimony and report of Dr. Wickstrom, another orthopedic surgeon, was essentially the same as that of Dr. Pollingue. The only difference noted is that Dr. Wickstrom estimates the limitation of motion of the thumb to result in approximately 12.5% disability of the thumb. This doctor also said that plaintiff is not disabled in his work. The only evidence of curtailment of activity in performance of plaintiff's duties after the injury is given by him when he said that on rare occasions his duties required him to climb a ladder some 60 or 70 feet into the hold of a ship and that after the accident he did not do that for almost a year. He never did say that his injury prevented him from climbing the ladder. We believe he could climb a ladder with one hand as well as with two.
It is our opinion that the lower court committed no error in overruling the plea of prescription.
The lower court allowed the plaintiff compensation at $10 per week for 150 weeks but the court gave no indication as to how that allowance was arrived at.
We think this case is on all fours with the case of Henry v. Ware Cotton Batting Plant, La.App., 117 So.2d 270, decided by this court. In that case the plaintiff's thumb was injured resulting in 10 to 15% loss of use of the thumb. Our law fixes compensation at 50 weeks for the loss of a thumb. In that case the plaintiff was allowed the minimum rate of $10 per week for 50 weeks. Here 10% loss of the use of the thumb would entitle the plaintiff to 10% of 65% of his wages for 50 weeks. This would be less than the minimum of $10. Therefore, he should be paid $10 per week for 50 weeks, or a total of $500, and the judgment should be amended accordingly.
Counsel for Standard Stevedoring Company, Inc., and the Travelers Insurance Company urge the defense against plaintiff's claim for compensation that plaintiff is barred from recovering compensation for the reason that he was guilty of "* * * willful intention to injure himself or to injure another * * *." LSA-R.S. 23:1081. This is a special defense and the defendants carry the burden to establish facts sufficient to convince the court that the plaintiff acted with such willful intent. Two witnesses, Francois and his co-employee, Williams, testified that plaintiff hit the first lick in the fight. Their testimony must be appraised in the light of all pertinent circumstances. Our measure of their testimony as against the testimony of Marie and the circumstances to be considered does not permit us to accord to their testimony sufficient weight to preponderate over the testimony of plaintiff accompanied by rational consideration of attending facts and circumstances, references to which have been made hereinabove. The authorities cited by said counsel are not sufficient to overcome the later decision in Velotta v. Liberty Mutual Insurance Co., 132 So.2d 51, 53 where the Supreme Court said:
"The appellate courts of this State in many instances have heretofore based their decisions interpreting this provision of the Compensation Act on the aggressor doctrine, generally denying recovery to the injured employee who provoked the assault which resulted in his injury. Although the results reached in these cases would not necessarily be erroneous, it would appear that the statutory provision involved does not require a resort to doctrines not there enunciated. The inquiry, under the mandate of the statute, it appears to us, should be limited to whether the employee's injury resulted from the employer's wilful intention to injure himself or another. Impulsive conduct, such as a push, shove, or a fist-blow, does not render the conduct *414 of the employee sufficiently serious or grave, and there is no wilful intention to injure one's self or another under such circumstances. The mere fact that the employee seeking recovery may have been to blame for the fray is not adequate to meet the testthere must be more. Johnson v. Safreed, 224 Ark. 397, 273 S.W.2d 545. The test should involve an inquiry into the existence of some premeditation and malice on the part of the claimant, coupled with a reasonable expectation of bringing about a real injury to himself or another. If the retaliation which flows from his misconduct is not such as could be reasonably expected, his intention could not be held to envision that result and hence is not within the purview of the quoted provisions of the Act.
"The defense the employer is entitled to invoke is a statutory one expressed in language that is clear and unmistakable and the superimposing of another doctrine, `aggressor' or otherwise, is not considered appropriate. Hartford Acc. & Ind. Co. v. Cardillo, 72 App.D.C. 52, 112 F.2d 11."
The Travelers Insurance Company intervened to recover from Marie and Dennis Sheen Transfer, Inc., the amount it had paid for medical expenses of plaintiff, any compensation which it may be required to pay to plaintiff and for reasonable attorney's fees. LSA-R.S. 23:1103 provides in specific language that in the event an injured employee becomes a party plaintiff in a suit against a third person and damages are recovered, such damages shall be so apportioned in the judgment that the claim of the employer for compensation actually paid shall take preference over that of the injured employee, with reasonable attorney's fees and costs. The lower court did not allow attorney's fees to the intervenor. The employer's compensation insurance carrier is in the same position as the employer would be as an intervenor.
In this case the intervenor, the Travelers Insurance Company, was already made a party defendant when it filed its intervention. In this situation no separate trial of the intervention was possible for the reason that the only issue of fact involved, as between the plaintiff and Standard Stevedoring Company, Inc., and Travelers Insurance Company, related to plaintiff's claim for compensation. Upon resolution of that issue in favor of the plaintiff, the intervenor's right to recover by preference its medical expenses, the amount of compensation allowed and attorney's fees out of plaintiff's judgment against Dennis Sheen Transfer, Inc., is a matter of law. Therefore, the intervenor should be allowed only the minimum amount for attorney's fees and we fix that amount at $50.
For these reasons, it is ordered, adjudged and decreed that the judgment appealed from running in favor of Frank Marie and against Dennis Sheen Transfer, Inc., in the sum of $2,500, is affirmed.
It is further ordered, adjudged and decreed that the judgment for workmen's compensation rendered in favor of plaintiff against Standard Stevedoring Co., Inc., and the Travelers Insurance Company be amended so as to reduce the term during which compensation is to be paid to 50 weeks, and that said judgment be further amended so as to provide that Standard Stevedoring Co., Inc., and the Travelers Insurance Company shall recover out of plaintiff's judgment for $2,500 on his damage suit the sum of $112 for medical costs expended, $500 the total amount of compensation for which said employer and insurer are liable unto plaintiff, and $50 as attorney's fees, and as thus amended and in all other respects said judgment is affirmed. Costs of the appeal from the judgment for compensation shall be paid by Standard Stevedoring Company, Inc., and the Travelers Insurance Company.
Amended and affirmed.