236 So.2d 626 (1970)
Ray R. MURRAY et al., Plaintiffs-Appellees,
v.
A. C. DOMINICK, III, et al., Defendants-Appellants.
No. 11433.
Court of Appeal of Louisiana, Second Circuit.
May 26, 1970.
*627 Skeels, Baker & Coleman, by Donald L. Baker, Shreveport, for defendants-appellants.
Lunn, Irion, Switzer, Johnson & Salley, by Richard H. Switzer, Shreveport, for plaintiffs-appellees.
Before AYRES, BOLIN, and PRICE, JJ.
AYRES, Judge.
This is an action in tort wherein plaintiff seeks to recover of the named defendant, his employee, and his insurer damages for personal injuries sustained as a result of a battery committed upon his person by defendant's employee. Plaintiff was joined in this action by his employer's workmen's compensation insurer which seeks reimbursement of hospital and medical expenses incurred in the treatment of plaintiff's injuries *628 as well as recovery of compensation previously paid.
Plaintiff was awarded damages against all defendants in solido for the sum of $5,000 and the compensation insurer was awarded the sum of $1,274. From this judgment defendants appealed. Plaintiff, by answer to the appeal, prays that his award be increased to $15,000.
Appellants point out and assign as error the action of the trial court in holding (1) that plaintiff had sustained the burden of proof to establish his claim; (2) that Dominick, as Reid's employer, was responsible for the employee's acts; (3) that Reid's participation in the altercation with plaintiff was within the course and scope of his employment; and (4) that plaintiff was not the aggressor in the altercation.
A resume of the facts is deemed essential to an understanding of the issues as they are resolved inasmuch as the questions presented for determination are largely factual in character.
Plaintiff Ray R. Murray was superintendent or manager of an establishment or plant of Red Barn Chemicals, Inc., located at Gilliam, Caddo Parish, Louisiana. Defendant Dominick, as a planter, operated a plantation in the northern part of Caddo Parish in the vicinity of Gilliam. Billy Reid was Dominick's plantation foreman.
On October 2, 1967, Red Barn Chemicals, Inc., refused to purchase a truckload of soybeans delivered to the plant by Dominick's employees. Dominick and Reid took a sack of these beans to the plant to ascertain why they were unacceptable. Murray advised them that the beans contained an excessive moisture content because they were prematurely harvested. To convince Dominick of that fact a test of the beans was suggested, and these parties repaired to a small building on the premises where the test was to be made. Two of Murray's employees, W. D. Ellis, Jr., and Willis LaRue, were also present. While the test was in progress Murray again advised he could not purchase the beans, whereupon Dominick became enraged and threw a tin weighing pan onto a bench. Murray admonished Dominick not to damage the equipment or furniture. In making this request, plaintiff testified he placed his hand on Dominick's shoulder and asked Dominick and Reid to leave the premises.
Defendants Dominick and Reid testified Murray grabbed Dominick by the shoulder and shoved and spun him around as they were asked to leave. Reid thereupon intervened on behalf of Dominick, and, although the testimony is conflicting, the argument continued until the parties were outside the building. At this point Reid inflicted upon plaintiff a severe beating, applying some three to five hard, heavy blows to Murray's face and head, causing him to slump to the ground. Upon arising, Murray was again confronted by Reid, then armed with a knife.
Plaintiff's version of the altercation was corroborated by the testimony of both Ellis and LaRue. Plaintiff claims he reached for a handkerchief to wipe blood from his eyes, whereupon Reid pulled out his knife. Reid contended he thought plaintiff was reaching for a knife; therefore, he pulled his own knife from his pocket. LaRue said plaintiff's hand never reached his pocket.
Plaintiff claims he never put a hand on Reid. This is corroborated by Ellis and LaRue. Ellis stated Reid kept insisting upon a fight. To the contrary, Dominick stated plaintiff reached for Reid; Reid said, for his collar, and thus plaintiff struck him with his open hand. As a result of a large ring worn by Reid, plaintiff sustained, from Reid's blows, a badly broken nose, several severe lacerations of his face and lip, and damage to his teeth. Reid's own testimony shows that plaintiff at most only took hold of Reid's shirt.
Reid's claim to nonliability is based upon the proposition that plaintiff provoked *629 the difficulty and was the aggressor, and that, as such, he should not be permitted to recover damages. This contention is based on the claim that, by both action and character of language directed to defendants, plaintiff was the aggressor in the affray. That one may be an aggressor by the use of abusive, insulting, and defamatory remarks alone, is a principle of law recognized in the jurisprudence of this State. For instance, we had occasion to refer to that rule in Baughman v. Wells, 171 So.2d 759, 762 (La.App., 2d Cir.1965), wherein, after reviewing the applicable jurisprudence, we stated:
"It appears, therefore, that while abusive, insulting, or defamatory remarks applied by a plaintiff to a defendant may be shown in a civil action as a provocation for assault and battery, this may be done only if the derogatory remarks were such as to justify the conclusion that it should have been anticipated that physical retaliation would be attempted and be looked upon as the certain forerunner of a violent physical encounter."
There is an exception to the general rule barring an aggressor from the recovery of damages inflicted upon him in a battery. This exception was pointed out by this court in Gallagher v. Taylor, 203 So.2d 773, 775 (La.App., 2d Cir.1967):
"The rule is well established in the jurisprudence of this State that when one, though first acting in self-defense, resorts to excessive violence and unnecessary force in repelling an assault, he becomes liable as an aggressor and is subject to an action for damages for assault and battery. Bethley v. Cochrane, 77 So.2d 228 (La.App., Orl.1955writ denied); Brazil v. McCray, 96 So.2d 887 (La.App., 1st Cir. 1957writ denied); Wilson v. Dimitri, 138 So.2d 618 (La. App., 4th Cir.1962).
"Thus, there is an exception to the general rule that an aggressor is precluded from recovering damages which he incurs as a result of his own actions in provoking an altercation. Accordingly, even where a plaintiff is wrong, such wrong does not bar his recovery of damages for a battery where defendant's wrong was out of all proportion to the wrong committed by plaintiff. Bauman v. Heausler, 188 So.2d 189 (La.App., 4th Cir.1966writ refused, 249 La. 719, 190 So.2d 235 [1966])."
Thus, we conclude, under the facts and circumstances of this case, and through the action of Dominick in throwing the weighing pan onto the equipment or furniture, plaintiff was provoked to take the action and utter the words of which defendants complain and as disclosed by the record. This action, in turn, provoked Reid to commit the battery upon plaintiff. The trial court apparently held, and we are in accord therewith, that plaintiff was not entirely free from fault, but, nevertheless, plaintiff's actions did not justify or warrant the extent of retaliation resorted to by Reid. Reid's acts were unnecessary and out of all proportion to the wrong committed by plaintiff. The conclusion is, therefore, inescapable that Reid is clearly liable for the injuries inflicted by him upon the plaintiff.
The liability of Dominick and his insurer was upheld under the principle of respondeat superior as defined in LSA-C.C. Art. 2320 which recites:
"Masters and employers are answerable for the damage occasioned by their servants and overseers, in the exercise of the functions in which they are employed.
"Teachers and artisans are answerable for the damage caused by their scholars or apprentices, while under their superintendence.
"In the above cases, responsibility only attaches, when the masters or employers, teachers and artisans, might have prevented the act which caused the damage, and have not done it."
*630 The defendants Dominick and his insurer take the position they are not liable to plaintiff for the damages inflicted by Reid for the reason, it is contended, Reid was not acting within the course and scope of his employment. Defendants rely heavily upon the holding in Bradley v. Humble Oil & Refining Company, 163 So.2d 180 (La. App., 4th Cir.1964writ refused). There it was held that the act of a service station attendant in spraying plaintiff with gasoline was not within the course and scope of the attendant's employment. It was there pointed out, in regard to liability imposed by Revised Civil Code Art. 2320 upon employers for acts of their employees, that such acts must be committed "in the exercise of the functions in which they are employed," that is, that the wrong must be committed in the course and scope of the servant's employment.
The liberal rule of interpretation accorded to the phrase "course and scope of employment" in workmen's compensation cases does not apply where an employee intentionally or maliciously inflicts injury upon third persons. Thus, it was stated in Bradley v. Humble Oil & Refining Company, supra:
"No vicarious liability will attach in such a case unless the employee acts within the ambit of his assigned duties and also in furtherance of his employer's objectives."
163 So.2d 180, 184.
See, also:
Williams v. Pullman's Palace Car Co.,
40 La. Ann. 87, 3 So. 631 (1888);
Wills v. Correge,
148 So.2d 822 (La.App., 4th Cir. 1963 cert. denied).
Plaintiff, however, cites and relies upon the pronouncements in Marie v. Dennis Sheen Transfer, Inc., 134 So.2d 407, 412 (La.App., 4th Cir. 1961), which held a truck driver's employer liable for damages occasioned by an assault by his employee upon a freight checker at a wharf in New Orleans:
"Now, therefore, we turn to counsel's argument that should we determine that Francois was the aggressor in the fight, then whatever he did was outside the scope of his employment. The truck driver asserts that when Marie came back after talking to Francois's employer and transmitted to Francois his employer's instructions either to co-operate or bring the truck in, he was on the truck with some bales of cotton yet unloaded; that he had to get on the ground in order to go to the cab of the truck, get in the cab and drive the truck away. It is somewhat significant that he jumped to the ground right in front of Marie. The deviation in his route to the cab to strike Marie was very slight. Although his striking was unauthorized he was enroute to the cab engaged in his master's business on his master's instruction when the act occurred. It was within the time and at the place of his employment and what he did was clearly incidental thereto. He was in the course of carrying out his employer's instructions and therefore within the scope of his employment. Nash v. Longville Lbr. Co., 146 La. 475, 83 So. 771, 148 La. 943, 88 So. 226; Bearman v. Southern Bell Tel. & Tel. Co., 17 La.App. 89, 134 So. 787; Starnes v. Monsour's No. 4, La.App., 30 So.2d 135. See also the many authorities cited in these cases."
Unlike the cases cited above by counsel, the employer herein was present from the beginning to the end of the incident. Reid was directed by Dominick, his employer, to accompany him to the plant of Red Barn Chemicals, Inc., to inquire concerning the condition of the beans and the reason they were not fit for sale. The original argument arose between plaintiff and Dominick. Reid then stepped in on behalf of and in the furtherance of his employer's cause. The record shows Dominick made no attempt physically or even verbally to restrain his employee. On the contrary, after *631 plaintiff was down and it appeared to Dominick that Ellis and LaRue might join in the fight, Dominick insisted that it remain a fair fight; if Ellis joined in, so would Dominick. Ellis testified Dominick, during the affray, turned to him and said, "If you want some of the same, we will give it to you."
Therefore, we are unable to escape the conclusion, even if it could be said that Dominick was not an actual participant in the affray, he was present, acquiesced in, condoned, and approved the actions of his employee. Dominick's failure to protest the actions of Reid, his employee, must therefore be regarded as an approval or as a condonation of his agent's action.
Braud v. Theriot,
170 So.2d 679 (La.App., 1st Cir.1964);
Oglesby v. Town of Winnfield,
27 So.2d 137 (La.App., 2d Cir.1946).
With respect to the quantum of the award, it is contended the trial court erred in finding that plaintiff's conduct was such as to be a provoking factor in the battery which followed, and that, while such conduct on the part of plaintiff was not sufficient to justify Reid's actions, it may be considered in mitigation of damages. The rule that provocation may mitigate damages is adhered to in this State.
Harvey v. Harvey,
124 La. 595, 50 So. 592 (1909);
Munday v. Landry,
51 La.Ann. 303, 25 So. 66 (1899);
Baughman v. Wells,
supra;
Quinn v. Banker,
166 So. 908 (La.App., 1st Cir.1936);
Derouen v. Fontenot,
8 La.App. 652 (1st Cir. 1928).
From our review and study of the record, we have concluded that damages were properly held to have been mitigated, and, in accordance therewith, an award of $5,000 for pain and suffering was adequate to properly compensate plaintiff for the injuries, pain and suffering as appraised by the medical experts.
Dr. Albert W. Thompson first administered to plaintiff's injuries. With respect thereto, he testified:
"He [Ray R. Murray] had severe contusions and lacerations about the face, lower lip, nose and forehead regions. There was a laceration under the left eye, over the left eye, and another laceration of the forehead. There was considerable trauma to the nose and nosebleed was observed with moderate to marked swelling of the observed area, and marked subjective pain. The lower lip was laid wide open for approximately one-and-a-half inches downward in the midline and this lesion stood open with considerable bleeding, stood open enough to admit one index finger. There was considerable trauma to the front teeth and gums, both upper and lower, involving the mucosal lining of the lip. I sutured all the lacerations and gave him the temporary protection against lockjaw which we call homotex, and also a tetanus booster. And then he was referred to Dr. John H. Hardin for reconstruction of the marked distortion of nasal bones in the face."
Plaintiff was next seen by Dr. John C. Hardin, Jr., a medical doctor as well as a dentist, who specializes in maxillofacial surgery. At the time he was first seen by Dr. Hardin, plaintiff's eyelids were so swollen as to close his eyes. There was a laceration lateral to the left eyebrow as well as a vertical laceration above the inner corner of the left eyebrow. The laceration on the lip extended completely through the lower lip. These had been sutured by Dr. Thompson. The nasal bone was grossly deformed and displaced, the left side inward and the right side outward, giving it a "C-shaped" deformity. The required surgery was performed by Dr. Hardin. This consisted of a closed reduction *632 of the nasal bones and of the nasal septum.
Plaintiff remained in the hospital for approximately five days following surgery. For the remainder of October, plaintiff remained an out-patient of Dr. Hardin who, following his discharge from the hospital October 7th, saw him October 11, 17, 30, and again on November 13 and December 11, 1967. During the course of treatment, Dr. Hardin removed two teeth damaged in the assault. An examination of March 27, 1969, disclosed continued swelling and blockage of the nasal passages which were treated at the time.
For the reasons assigned, we find no error in plaintiff's award nor in the award to plaintiff's compensation insurer.
The judgment appealed is accordingly affirmed at defendants-appellants' costs.
Affirmed.