350 So.2d 268 (1977)
Joan Ann Schnexnayder GAUTREAU, Individually, and as Natural Tutrix of the minors, Paul A. and Randy J. Gautreau
v.
Edmond DAVIS and the State of Louisiana, through the Louisiana Board of Highways and Department of Highways.
No. 8335.
Court of Appeal of Louisiana, Fourth Circuit.
September 8, 1977.
Rehearings Denied October 12, 1977.
Writs Refused November 23, 1977.
*269 Mengis, Roberts, Durant & Carpenter, Charles William Roberts, Baton Rouge, and James Allen Wayne, Sr., Donaldsonville, for defendants-appellants.
Raymond B. Gautreau, Donaldsonville, for plaintiff-appellee.
Before LEMMON, GULOTTA and BEER, JJ.
BEER, Judge.
This is a suit by Mrs. Joan Ann Schexnayder Gautreau, individually and as natural tutrix of her two minor sons, Paul and Randy, for the wrongful death of her husband, Warren A. Gautreau, who was shot to death on November 1, 1973, at about 6:15 p. m. by defendant, Edmond Davis, who was employed by defendant, Louisiana Department of Highways (hereafter, the "Department"), as a toll collector on the Sunshine Bridge at Donaldsonville, Louisiana. Judgment was rendered in favor of plaintiff and against the defendants in solido from which the Department suspensively appeals, contending:
The trial judge manifestly erred in several particulars in the findings of fact. The trial judge erred in holding that the doctrine of self-defense was inapplicable under the circumstances present.
The trial judge erred in holding that the Department of Highways was guilty of actionable negligence, and that this negligence was the proximate cause of the harm suffered by plaintiff.
The trial judge erred in determining the quantum of damages without considering numerous mitigating factors adduced in the evidence taken at trial.
Davis devolutively appeals, contending:
The trial judge erred in finding that the defendant, Edmond Davis, was guilty of negligence and that this negligence was the proximate cause of the harm suffered by plaintiff.
The trial judge erred in not ruling that Edmond Davis was acting in the scope of his employment with the Department of Highways and did nothing as an individual to cause the harm done.
Plaintiff answers the appeal, seeking an increase in quantum.
In written reasons for judgment, the trial judge outlined a chronological description of what took place on the evening in question, for which we find support in the record:
"The evidence shows that some weeks prior to the shooting, the decedent, Warren A. Gautreau, having crossed the Sunshine Bridge, operated by the State Department of Highways, ran out of gas *270 near the toll booth located on the west side of the said Bridge in the Parish of St. James. Gautreau had asked Edmond Davis if he could buy any gas and was told by him that there was no gas available for the public. Gautreau pointed to the gas pump near the Administration Building but was told that that gasoline was for the use of State vehicles. When he started walking towards the pump, Davis called the police who came within a short period of time to investigate. They questioned Gautreau and then reported to Davis everything was all right. Several days thereafter Gautreau again crossed the Bridge and after paying his toll asked Melvin Davis, a brother of Edmond, using obscenity, if he was the one who called the police on him. Melvin said it was his brother, whereupon the decedent told Melvin to tell Edmond `Well, when you see him again, you tell him that I'm going to kick his ass.'
Some days later, according to the testimony of the Davis brothers, both Edmond and Melvin were on duty at about 6:15 P.M. on the evening of November 1, 1973. Gautreau again crossed the bridge and paid his toll and while doing so used obscene and offensive language which was returned, in kind, by the two toll attendants. Gautreau, thereupon, drove and parked his truck near the Administration Plaza some 100 or more feet from the booth and then returned towards the booth bare-handed. Verbal abuse was hurled back and forth between the participants and then, according to the testimony of the Davis brothers, Gautreau unlatched the metal door of the booth, entered and took a swing at Edmond which missed. Edmond testified that he then reached for a revolver he kept on a nearby stool, which he had purchased the day before, and shot Gautreau in the chest. Then, according to Edmond Davis, Gautreau continued to advance, whereupon, he shot him a second time in the leg. Gautreau turned around, walked back to his truck where after a short period of time he collapsed and died of internal hemorrhages as a result of the gunshot wounds.
The type and location of the toll booth is of material significance in this case. It is a rectangular shaped room about 12 feet long and about 4 or 5 feet wide located between the east bound and west bound traffic lanes of the Bridge. On each side of the building are two doors similar to Dutch doors. The top and inner portions fold back leaving closed the bottom metal half of the latched and closed door. There is a one step riser from ground level into the doorway. One or two attendants can collect fares from traffic traveling in either direction.
According to the Davis brothers, the decedent unlatched the door and entered into the booth jamming the two brothers into a corner. While jammed in this position and believing they were in eminent danger of death or great bodily harm, Edmond shot Gautreau. There is some testimony that blood was found at the entrance of the booth. Smith Eddie Garrison who was about 100 feet away, testified that he saw Gautreau in the booth. Dr. A. J. Nobel, Coroner of the Parish of St. James testified that there were no powder burns on the body of the decedent which would indicate, in his opinion, that the decedent was not within close range when he was shot."
The trial judge then discussed the liability of Davis, as follows:
"From observing the manner and demeanor of the witnesses on the stand and from reading the testimony in this case, this Court reaches the conclusion that the circumstances surrounding the incident were not sufficient for Edmond Davis to invoke the doctrine of self defense, as that doctrine is known and applied in the State of Louisiana to the extent of killing his opponent.
If a person is assaulted, he is justified in using the force necessary to repel his assailant but no more. In cases of personal conflict or during an altercation, in order to establish such a defense, it must appear that the defendant was assaulted and that the assault was of such character *271 that he had apparent reason to believe and did believe that the design was to destroy his life; that his life was in danger or that he was in danger of suffering great bodily harm at the hands of his assailant; that the sudden, fierceness, or violence of the assault was such that he could not without great danger to himself refrain from slaying his assailant; that he only used such force as was necessary to protect himself, that he slew in honest self-defense and not for the purpose of inflicting vengenance upon an enemy. The degree of force used in self defense must not exceed the bounds of prevention and defense. This will depend upon the circumstances of the case, that is the character of the assault, taking into consideration the relative situation and condition of the parties.
Conceding that Gautreau was the aggressor in this altercation, the force used by Edmond Davis was, under the circumstances, in our opinion, excessive and beyond the bounds of legitimate prevention and self defense. No prior threats of great bodily harm had been made and the ability to inflict any harm is questionable because of the presence of the two brothers.
The record shows that on this occasion after engaging in mutual obscenities, Gautreau drove off and parked his truck at some distance from the toll booth. When he started walking back towards the booth Davis phoned the Sheriff's department in Donaldsonville. He observed that Gautreau had nothing in his hands or about his person. At the same time that he called the police, he could very well have closed the door to the booth. As stated above, the bottom portion of this Dutch type door is a solid and substantial metal door which when closed would have effectively prevented the entry of a bare handed assailant. Further, Davis testified that Gautreau reached into the booth and unlatched the door from the inside. When he was looking for the latch and unlocking the door Davis, if he had any inclination to peaceably prevent the assault, had ample time to retreat from the booth by means of the door to his rear. Then too, when we consider that this altercation was a continuing affair which . . . leaves the Court to believe that the design of the defendant was not to resist the assault of the decedent but rather to inflict punishment upon an enemy." (Emphasis ours.)
The court went on to a discussion of the liability of the Louisiana Department of Highways, observing as follows:
"The record shows that for many years, since 1964, it had been the policy of the Bridge Administration to prohibit the toll collectors to possess arms of any character. The purpose of this regulation aside from the danger inherent in fire arms was principally to protect the lives of the personnel in the event of hold-ups upon them. The evidence in this case shows that the superintendent at the time of this shooting had failed to give specific orders with reference to this policy to these employees and that his failure in this regard and his failure to discover that his employees were armed constituted actionable negligence. We are of the opinion that a toll paying passenger is a business guest or invitee and that the State owes him the duty of reasonable prior discovery of unobservable dangerous conditions of the premises and the correction thereof. Mitchell v. Aetna Casualty and Surety Co., La.App., 284 So. 2d 636.
Accordingly, we hold that Edmond Davis and the State of Louisiana through the Board of Highways and the Department of Highways are liable, in solido, for the injury and death of the said Warren A. Gautreau."
A very careful consideration of the record compels the observation that there is a vast difference between the support that exists in the record for the ultimate trial court determinations which form the basis of finding liability on the part of Davis and that which can properly form any basis for liability on the part of the Louisiana Department of Highways.
*272 For example, although Davis is depicted as being a small man, completely intimidated by the threatening and unwarranted approach of Gautreau, his own testimony reveals less than a complete desire to withdraw from the fray: "I told him (Gautreau) I couldn't fight him because I was on my job, that I'd fight him after work, after I'd get off." (Emphasis ours.)
As to whether the Davis brothers were actually "cornered" in the toll booth or, on the contrary, had an opportunity to retreat from the fight by means of a back door of the booth, testimony of witness Robert J. Mire indicates that he stopped at the toll booth to pay his toll, at which time he saw two black men "right at the doorway." He heard someone say "get out of here," then heard a shot and saw the two men, one holding a pistol, still moving towards the back of the booth.
The record confirms that Edmond Davis purchased the .22 pistol used in the shooting on the day before the occurrence. Davis contends the gun was bought in order to make a profit from its resale. Why, if this be true, was it necessary for Davis to bring the loaded gun to work?
In summary, while there is sufficient evidentiary basis for the trial judge's conclusion that Davis failed to meet the burden of proving self defense, and our confirmation of his conclusion that "the design of the defendant was not to resist the assault of the decedent but rather to inflict punishment on an enemy" is clearly supportable, these very conclusions have a compelling effect on that part of the trial court decision which imposes liability on the Department of Highways. We turn to a consideration of that aspect of the trial court judgment.
In order for an employer to be held vicariously liable, the employee whose act has caused damage must be reasonably within the course and scope of his employment. Thus, a tortious assault is chargeable against the employer only when the action which forms the basis of the claim is reasonably incidental to the performance of employment duties or in furtherance of the employer's business and not motivated by hatred or a desire to inflict punishment due to personal antagonisms. See LeBrane v. Lewis, 292 So.2d 216 (La.1974); Strawder v. Harrall, 251 So.2d 514 (La.App. 1st Cir., 1971). As stated in Murray v. Dominick, 236 So.2d 626 (La.App. 2nd Cir., 1970): "The liberal rule of interpretation accorded to the phrase `course and scope of employment' in workmen's compensation cases does not apply where an employee intentionally or maliciously inflicts injury upon third persons."[1] Yet, here the trial court finds as fact (and we agree) that:
1. "Verbal abuse was hurled back and forth between the two participants . . ."
2. The gun was purchased the day before the incident.
3. "At the same time he (Davis) called the police, he could very well have closed the door to the booth."
4. ". . . (T)his altercation was a continuing affair which . . . leaves the Court to believe that the design of the defendant was not to resist the assault of the decedent but rather to inflict punishment upon an enemy." (Emphasis ours.)
Davis was neither authorized to use a firearm in connection with his duties nor was he supplied one, and there is absolutely no evidence that St. Germaine, Davis' supervisor, knew, or had reason to know, that he had a gun on the premises, particularly in view of the uncontested fact that Davis acquired the gun one day before the shooting.
We find no evidentiary or legal basis for the view that the Department of Highways was negligent and thus proximately responsible by failing to articulate a specific policy against the use of pistols by toll collectors. That entity was no more obliged to articulate *273 such a policy with respect to this category of employee than with respect to other employees who work on the open road, or, for that matter, with respect to any employee.
The Ascension-St. James Bridge and Ferry Authority which had supervised the operation of the bridge until January 1, 1973, when the Department of Highways took over that function, had, apparently, orally informed the toll collectors that firearms should not be kept in the toll booths. Bernard Vetter, who had served as bridge manager for the Bridge & Ferry Authority and, for a brief period, as manager for the Department of Highways, testified that from January 1, 1973 until he left on March 31, 1973, there was an unwritten, word of mouth "policy" against toll collectors keeping a weapon in the toll booth. The apparent genesis of this so-called policy was in anticipation of a hold-up. If that took place, the toll collectors were instructed to "put their hands up and walk out and let them take it all." Thus, the "policy" was, in fact, nothing more or less than a verbal exchange which Vetter had with newly hired employees, at the time of their hiring, which was precipitated by a concern for their own safety and protection. St. Germaine, the bridge manager at the time Davis was employed, was, himself, a Department of Highways employee. He testified that he knew of no policy regarding the possession of fire arms by the toll collectors nor had he issued any instructions in connection therewith.
Assuming, arguendo, that such a "policy" existed, and further assuming that Davis had not been so advised, it is both remote and speculative that such omission could be categorized as proximately resulting in Mr. Gautreau's death, particularly in view of the trial court's fact finding that:
1. The gun was bought the day before the shooting.
2. The shooting was by design and to inflict punishment upon an enemy.
3. The shooting took place many days after the original incident that caused bitter feeling to erupt between Davis and Gautreau.
Nor has plaintiff demonstrated by any evidence whatsoever that such a policy (even if existent) was designed to protect against the risk here encountered by the decedent. Mr. Vetter, the employee of the bridge authority and subsequently of the Department of Highways prior to the time that Davis was hired, testified that the specific purpose of the word of mouth admonition was "for the protection of the toll collectors."
Furthermore, at all times pertinent to this case, the record can not support any finding that a "regulation" even existed nor, axiomatically, that St. Germaine "failed to give specific orders with reference to" such unproven regulation.
Likewise, the record does not support a finding that "actionable negligence" was "constituted" by St. Germaine's "failure to discover that his employees were armed."
It will serve no useful purpose to elaborate on this beyond the point of simply noting that the foregoing legal conclusions are unsupportable on this record. To categorize the facts of this case as descriptive of a situation where the Louisiana Department of Highways breached a "duty of reasonable prior discovery of unobservable dangerous conditions of the premises and the correction thereof" is non-meritorious. The trial judge cites Mitchell v. Aetna Casualty and Surety Company, supra, but the facts of that case do not remotely compare to those here existent. Though we share the trial court's well-placed concern for the unfortunate widow and children of decedent, we are constrained to the view that there is no defensible basis for the imposition of liability on the part of the Department of Highways.
In addressing the issue of quantum as raised by appellee's answer to the appeal, we are of the view that the award is within the "much discretion" range. The record is incomplete with respect to Davis' personal ability to respond to the judgment though, realistically, it is reasonably apparent that he does not likely possess the resources with *274 which to respond in any substantial measure.[2]
In this connection, we take note, for such use as a reviewing court may wish to make of it, that on the totality of this record, we would not have reached factual conclusions supportive of a finding of liability on the part of Davis. But we adhere to the properly imposed restraint which, in certain circumstances, enjoins us from reversing such finding by the trial court. However, such is not the case with respect to the imposition of liability on the part of the Department of Highways, where, on the facts and the law, the record leaves us no alternative but to reverse.
Accordingly, that part of the judgment of the 23rd Judicial District Court for the Parish of St. James dated September 20, 1976, which casts the State of Louisiana through the Louisiana Board of Highways and the Department of Highways in judgment is reversed and that claim is dismissed at appellee's cost. We affirm the judgment rendered in favor of Mrs. Joan Ann Schnexnayder Gautreau, individually, and as natural tutrix of the minors, Paul A. and Randy J. Gautreau, and against Edmond Davis, in the amount of One Hundred, Sixty-Five Thousand and No/100 ($165,000.00) Dollars with legal interest from the date of judicial demand until paid. All parties to this appeal shall bear their own costs.
AFFIRMED IN PART, REVERSED IN PART AND RENDERED.
LEMMON, J., concurs.
NOTES
[1] However, this view has not been altogether embraced. See footnote 3 in LeBrane v. Lewis, supra.
[2] Note his affidavit filed pursuant to the provisions of LSA-C.C.P. Articles 5181, et seq.